**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

**Civil Case No.:  12-2815**

| | |
|---|---|
| **NICOLE VAN ATTA,** as an individual, and**,** | **:** |
| on behalf of all others similarly situated, | **:** |
| | **:** |
| *Plaintiff,* | **:** |
| *vs.* | **:** |
| | **:** |
| **GENERAL MILLS, INC.,** a Delaware | **:** |
| corporation, | **:** |
| | **:** |
| *Defendant.* | **:** |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff, Nicole Van Atta ("Plaintiff"), individually and on behalf of all others similarly situated in the State of Colorado, by and through her undersigned counsel, and pursuant to *Federal Rule of Civil Procedure* 15(a)(1)(B), hereby brings this consumer class action against Defendant, General Mills, Inc. ("General Mills" or "Defendant"), to challenge Defendant's violations of Colorado state law based on their unlawful and fraudulent business practices, whereby Plaintiff seeks certification of this matter as a class action by submitting this First Amended Class Action Complaint and alleging as follows:

## I. <u>INTRODUCTION</u>

1.     Plaintiff brings this class action to secure, among other things, equitable relief, declaratory relief, restitution, disgorgement, and damages for a Class of similarly situated Colorado purchasers, against GENERAL MILLS, for deceptive and misleading advertising, in violation of Colorado's Consumer Protection Act, COLO. REV. STAT. § 6-1-105, *et seq.*, along with causes of action for Breach of Express Warranty, Breach of Implied Warranty of

Merchantability, Unjust Enrichment, Claim for Declaratory Judgment, and Claim for Money Had and Received.

2.      In addition to damages, Plaintiff and the members of the Class seek an order requiring Defendant to cease using genetically modified organisms in its 100% Natural products, and/or stopping Defendant from representing its products are 100% natural when they are not, and additionally request an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's failure to disclose the existence and significance of said misrepresentations.

3.      Defendant has mistakenly or misleadingly represented on its label that its Nature Valley® granola bars (the "Products") are "100% Natural" when in fact, they are not, because they contain Genetically Modified Organisms ("GMOs"), a fact that Defendant fails to disclose in its related advertising for the Products.[1]

4.      GMOs are plants that grow from seeds in which DNA splicing has been used to place genes from another source into a plant. GMOs are not natural because they grow from seeds that have been modified in the laboratory. Genetic engineering can create plants with exact desired traits. Genes can be transferred from one plant to another, and genes from non-plant organisms can also be used.  For example, the use of *Bacillus thuringiensis,* also known as "B.t." is a bacterium that produces crystal proteins that are lethal to insect larvae. B.t. crystal proteins are commonly transferred into corn, enabling the corn to produce its own pesticides against insects.  This is just one example how the existence of GMOs in the Products makes the "100% Natural" claim blatantly false and misleading.

---

1.      Plaintiff's omission claim is explicitly not in relation to the Products' labeling.

5.      Since the corn and/or soy ingredients contained in the Products have been genetically modified to add or include additional genes and/or DNA, the Products are, therefore, not "100% Natural," as Defendant claims.

6.      There is an increasing concern amongst health experts and consumers alike that introducing foreign genes into food plants may have unexpected and negative impacts on human health, such as creating new allergens, causing allergic reactions in susceptible individuals, and digestive issues.

7.      Plaintiff thus brings this class action to stop General Mills from including genetically modified ingredients in its "100% Natural" products or, in the alternative, from representing the Products are "100% Natural" when they are not, to recover damages, injunctive relief, declaratory relief, and restitution for Plaintiff and the Class.

8.      All allegations contained herein are based upon information and belief, which are likely to have evidentiary support after a reasonable opportunity to conduct discovery.

## II. JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter presented by this First Amended Class Action Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the plaintiff class is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs.  Pursuant to 28 U.S.C. § 1332(d)(2)(A), Plaintiff alleges that the total claims of the individual members of the Plaintiff Class in this action are in excess of $5,000,000.00, in the aggregate, exclusive of interest and costs, and as set forth below, diversity of citizenship

exists under CAFA because Plaintiff is a citizen of Colorado, and GENERAL MILLS can be considered a citizen of Delaware.

10.     Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(a) because, as set forth below, Defendant conducts business in, and may be found in, this district, and Plaintiff purchased the subject Products of this action in this judicial district.

### III. <u>PARTIES</u>

11.     Plaintiff is an individual more than 18 years old, and is a citizen of Colorado, resident of Aspen, Pitkin County.  Plaintiff respectfully requests a jury trial on all damage claims.

12.     During September of 2012, Plaintiff purchased Nature Valley® 100% Natural Dark Chocolate Peanut Butter Crunchy Granola Bars and Nature Valley® 100% Natural Oats and Honey Crunchy Granola Bars, that misleadingly claim to be "100% Natural," on its labeling, but contain GMOs in the form of corn, soy, corn derivatives, and/or soy derivatives; specifically: Yellow Corn Flour, Soy Flour, and/or Soy Lecithin.

13.     In purchasing the Products, Plaintiff read and relied on the material statement on the labeling that the Products are "100% Natural." Plaintiff purchased the Products believing them to be "100% Natural," which she believed meant to include that the Products are GMO-free, because she perceived, read and relied on General Mills' material statement that the Products are "100% Natural," prominently displayed on the Products' front labeling/packaging.

14.     Plaintiff has been damaged by her purchase of the Products because the labeling and advertising for the Products was and is false and/or misleading under Colorado law; therefore, the Products are worth less than what Plaintiff paid for it and/or Plaintiff did not receive what she reasonably intended to receive when purchasing the Products.

15.     Defendant General Mills Company ("General Mills") is a Delaware licensed corporation with its principal place of business located in the State of Minnesota at One General Mills Blvd., Minneapolis, Minnesota 55426.  General Mills lists with the Colorado Secretary of State a Registered Agent designated as National Registered Agents, Inc., 1535 Grant Street, Suite 140, Denver, Colorado 80203.  Therefore, General Mills can be considered a "citizen" of the State of Delaware.  Defendant General Mills promoted and marketed the Products at issue throughout Colorado, in this jurisdiction, and in this judicial district.

16.     GENERAL MILLS is the owner, manufacturer and distributor of the Products, and is the company that created and/or authorized the false, misleading and deceptive labeling and advertising for the Products and is the company that promoted, marketed, and sold the Products at issue in this judicial district.

17.     The labeling and advertising for the Products relied upon by Plaintiff was prepared and/or approved by GENERAL MILLS and its agents, and was disseminated by GENERAL MILLS and its agents through labeling and advertising containing the misrepresentations and failure to disclose alleged herein. The labeling and advertising for the Products was designed to encourage consumers to purchase the Products and reasonably misled the reasonable consumer, i.e. Plaintiff and the Class.

18.     Plaintiff allege that, at all relevant times, GENERAL MILLS and its subsidiaries, affiliates, and other related entities, as well as their respective employees, were the agents, servants and employees of GENERAL MILLS, and at all relevant times, each acted within the purpose and scope of that agency and employment. Plaintiff further alleges on information and belief that at all times relevant herein, the distributors and retailers who delivered and sold the Products, as well as their respective employees, also were General Mills' agents, servants and

employees, and at all times herein, each was acting within the purpose and scope of that agency and employment.

19.     Additionally, Plaintiff alleges that, in committing the wrongful acts alleged herein, GENERAL MILLS, in concert with its subsidiaries, affiliates, and/or other related entities and their respective employees, planned, participated in and furthered a common scheme to induce members of the public to purchase the Products by means of false, misleading, deceptive and fraudulent representations, and that GENERAL MILLS participated in the making of such representations in that it disseminated those misrepresentations and/or caused them to be disseminated, and failed to disclose in its product advertising that the Products contain GMOs.

20.     Whenever reference in this First Amended Class Action Complaint is made to any act by GENERAL MILLS or its subsidiaries, affiliates, distributors, retailers and other related entities, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of GENERAL MILLS committed, knew of, performed, authorized, ratified and/or directed that act or transaction on behalf of GENERAL MILLS while actively engaged in the scope of their duties.


## IV. FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### General Mills' Advertising and Labeling of its 100% Natural Products

21.     GENERAL MILLS manufactures, distributes, markets, advertises, and sells the Products, in at least thirty (30) different varieties/flavors, which claim to be "100% Natural," when in fact, they are not, because they contain GMOs in the form of corn, soy, corn

derivatives, and/or soy derivatives, including, but not limited to the following varieties, which contain GMOs in the form of Yellow Corn Flour, Soy Flour, and/or Soy Lecithin:

    a)  Nature Valley® Dark Chocolate Peanut Butter Crunchy granola bars; and

    b)  Nature Valley® Oats and Honey Crunchy granola bars.

22.    A true and correct copy of the labeling and packaging for Defendant's Nature Valley® Dark Chocolate Peanut Butter Crunchy Granola Bars, which shows the misleading "100% Natural" statement, along with the GMO based ingredients as Yellow Corn Flour, Soy Flour, and/or Soy Lecithin, is attached hereto and incorporated herein as **<u>Exhibit</u> 1**.

23.    A true and correct copy of the labeling and packaging for Defendant's Nature Valley® Oats and Honey Crunchy Granola Bars, which shows the misleading "100% Natural" statement, along with the GMO based ingredients as Yellow Corn Flour, Soy Flour, and/or Soy Lecithin, is attached hereto and incorporated herein as **<u>Exhibit</u> 2**.

24.    Defendant's "100% Natural" statement prominently displayed on the Products' packaging and/or labeling is false, misleading, and likely to deceive reasonable consumers, such as Plaintiff and members of the Class, because the Products are not "100% Natural," due to the presence of GMOs in the Products, which is not disclosed to consumers in any of Defendant's related advertising for the Products.

25.    Nevertheless, Defendant markets, advertises, sells and distributes these Products to Colorado purchasers in Colorado food chains, mass discounters, mass merchandisers, club stores, convenience stores, drug stores and/or dollar stores, as being 100% Natural.

26.    Each Product's label states, in large bold letters, that it is "100% Natural." All Consumers who purchase the Products are exposed to the same "100% Natural" claim. Unfortunately for consumers, consumers are charged a premium for these alleged "100%

Natural" products. Defendant's advertising and labeling is misleading and likely to deceive the average customer.

27.     At all relevant times herein, Defendant's "100% Natural" claims are also broadcast over the Internet on its website, *www.generalmills.com*, making the statement, "100% Natural."

28.     Defendant's "100% Natural" representations convey a series of express and implied claims which they know are material to the reasonable consumer and which they intend for consumers to rely upon when choosing to purchase Defendant's products.

29.     The advertising and marketing for the Products creates the uniform, false net-impression that the Products are comprised of only 100% natural ingredients.  Defendant then charges a premium for product that is not 100% natural, but that contains the same genetically modified ingredients contained in its other products and other products in the marketplace.

30.     There is nothing natural about genetically modified food.

## **Genetically Modified Ingredients Are Not "100% Natural"**

31.     GMOs are plants that grow from seeds in which DNA splicing has been used to place genes from another source into a plant.  Contrary to Defendant's express or implied representations, the Products use plants or plant derivatives grown or created from GMOs.

32.     The term GM foods or GMOs (genetically-modified organisms) commonly refers to crop plants created for human or animal consumption using the latest molecular biology techniques. These plants have been modified in the laboratory through a process whereby the genes of one species are inserted into another species.  The purported purpose of genetic engineering plants is to enhance certain traits, such as, for example, increased resistance to herbicides.

33.     Genetic engineering can create plants with exact desired traits very rapidly and with great accuracy. For example, plant geneticists can isolate a gene responsible for drought tolerance and insert that gene into a different plan. The new GMO plant will also gain that modified trait.

34.     Genes can be transferred from one plant to another and genes from non-plant organisms can be transferred into a plant. One common example is the use of *Bacillus thuringiensis,* (B.t.) genes into corn. B.t. is a naturally occurring bacterium that produces crystal proteins that are lethal to insect larvae. Using B.t. crystal protein genes in corn enable the corn to produce its own pesticides against insects.

### Increased Public Concern Over GMOs

35.     GMOs are not expected to be in foods labeled "100% Natural." Recently, Americans have also expressed a heightened concern about the safety of GMO Products, as evinced by the fact that legislation requiring labeling GMOs have been proposed in more than a dozen states since 2011.   *See http://www.nytimes.com/2012/05/25/science/dispute-over-labeling-of-genetically-modified-food.html?_r=0* (last visited January 15, 2013).  In addition, polls taken by the Pew Center, Consumers Union, Harris Interactive and ABC over the last decade that have consistently found that the vast majority of Americans would like to see genetically modified foods better regulated and labeled.[2]

36.     Concerns about GMOs fall into three categories: environmental hazards, human health risks and economic concerns.

—————————————

2.     Eng, Monica. "Debate rages over labeling biotech foods; Industry resists listing genetically modified ingredients; consumer worries continue." L.A. Times.  June 2, 2011. BUSINESS; Business Desk; Part B; p. 4.

37.     Concerns for human health risks associated with GMOs include the possibility that introducing a new gene into a plant may create a new allergen, cause an allergic reaction in susceptible individuals or have an unexpected and negative impact on overall human health.

### Plaintiff's Purchase of the Products

38.     Plaintiff purchased Nature Valley® 100% Natural Dark Chocolate Peanut Butter Crunchy Granola Bars and Nature Valley® 100% Natural Oats and Honey Crunchy Granola Bars that misleadingly claim to be "100% Natural," on its packaging and labeling, but contain GMOs in the form of corn, soy, corn derivatives, and/or soy derivatives; specifically: Yellow Corn Flour, Soy Flour, and/or Soy Lecithin.

39.     Prior to her purchase, Plaintiff perceived and read the labels of the Products, including the prominent claims that the products are "100% Natural." Plaintiff believed that there were no genetically modified ingredients in the two products because their labels said they were "100% Natural." Plaintiff would not have purchased the Products had she known that they were not 100% natural.

40.     Plaintiff relied upon the advertising containing the misrepresentations and omissions alleged herein, which was prepared and approved by Defendant and its agents and disseminated through its labeling of the Products.

41.     Plaintiff believed the representation on the label that the Product was "100% Natural" and thus the Product did not contain, nor was it made with, any genetically modified ingredients. If Plaintiff had known the Product she purchased contained GMOs, and thus was not "100% Natural," she would not have purchased them.

42.     In addition, Defendant fails to disclose the fact that the Products contain GMOs in its related advertising for the Products.  This omission claim is explicitly not in relation to the labeling for the Products.

43.     Plaintiff contends that the Products containing GMOs are not "100% Natural" and that Defendant's advertising and labeling is deceptive and likely to mislead reasonable consumers, like Plaintiff and the Class, as a result.

44.     Plaintiff purchased the Products because she believed the Products were "100% Natural," based on her reliance upon Defendant's material statement that the Products were "100% Natural" on the front labeling of the Products, and upon Defendant's omission that the Products contain GMOs in any related advertising.

45.     Plaintiff, and all other similarly situated reasonable consumers, believed that when Defendant used the material phrase 100% natural, that Defendant meant it to mean that the Products do not contain GMOs.

46.     Defendant manufactures, markets, advertises, distributes and sells the Products in retail stores located throughout Colorado, and in this judicial district, claiming to be "100% Natural;" specifically, on the front labeling or packaging for the Products.

47.     As a result, through a variety of advertising, including but not limited to the packaging and labeling of the Products, GENERAL MILLS has made false and misleading material statements and representations regarding the Product that have been relied upon by Plaintiff and members of the Class.

48.     Although Defendant markets the Products as 100% natural, it fails to also disclose material information about the Products; the fact that it contains GMO's. Therefore, Defendant's advertising and labeling statement that the Products are "100% Natural" is

deceptive and likely to mislead reasonable consumers, such as Plaintiff and members of the Class.

49.     Plaintiff, like members of the Class, purchased the Products relying on the "100% Natural" material misrepresentation on the Products' label.

50.     Plaintiff based her purchase upon General Mills' material statement that the Products were "100% Natural," which she read on the front labeling of the Products, and relied upon prior to making her purchase.  Plaintiff would not have purchased the Products if she had known that the Defendant's Products are not "100% Natural" because they contain GMOs.

51.     Plaintiff and members of the Class have been economically damaged by their purchase of the Products because the Products are not "100% Natural."  At a minimum, Plaintiff contends that Defendant should cease labeling the Products as "100% Natural."

52.     Plaintiff has been damaged by her purchase of the Products because the labeling and advertising for the Products was and is false and/or misleading under Colorado law; therefore, the Products are worth less than what Plaintiff paid for them and/or Plaintiff did not receive what she reasonably intended to receive.

53.     Moreover, Plaintiff paid a premium price for the "100% Natural" products, as they cost approximately twice as much as other, similar products that are not labeled as "100% natural."

54.     Reasonable consumers, such as Plaintiff and members of the Class care whether the Products are 100% natural and/or contain genetically modified or bioengineered ingredients, and attach importance to this claim when making a purchasing decision.

# V. <u>CLASS ACTION ALLEGATIONS</u>

55.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this First Amended Class Action Complaint.

56.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this class action and seeks certification of the claims and certain issues in this action on behalf of a Class defined as:

> **all Colorado residents who have purchased General Mills Nature's Valley granola bars containing Yellow Corn Flour, Soy Flour, or Soy Lecithin, for personal use, during the period extending from October 23, 2008, through and to the filing date of this First Amended Class Action Complaint.**

57.     Plaintiff reserve the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.  Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries,  and assigns.   Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

58.     Defendant's practices and omissions were applied uniformly to all members of the Class, including any subclass arising out of the Colorado statutory claims alleged herein, so that the questions of law and fact are common to all members of the Class and any subclass.

59.     All members of the Class and any subclass were and are similarly affected by the deceptive labeling of the Products, and the relief sought herein is for the benefit of Plaintiff and members of the Class and any subclass.

60.     Based on the annual sales of the Products and the popularity of the Products, it is apparent that the number of consumers in both the Class and any subclass is so large as to make joinder impractical, if not impossible.

61.     Questions of law and fact common to the Plaintiff Class and any subclass exist that predominate over questions affecting only individual members, including, inter alia:

      a.   Whether Defendant's practices and representations related to the marketing, labeling and sales of the Products were unfair, deceptive and/or unlawful in any respect, thereby violating Colorado's Consumer Protection Act, COLO. REV. STAT. § 6-1-105, *et seq.*; and

      b.   Whether Defendant's practices and representations related to the marketing, labeling and sales of the Products amounted to breach of express warranty; and

      c.   Whether Defendant's practices and representations related to the marketing, labeling and sales of the Products amounted to breach of the implied warranty of merchantability,

      d.   Whether Defendant was unjustly enriched through its marketing, labeling and/or sales of the Products;

      e.   Whether Plaintiff is entitled to a Declaratory Judgment as a result of Defendant's practices and representations related to the marketing, labeling and sales of the Products;

      f.   Defendant's practices and representations related to the marketing, labeling and sales of the Products amounts to violation of Money Had and Received;

      g.   Whether the Products are "100% Natural;"

h.   Whether the ingredients contained in the Products are "100% Natural;"

i.   Whether the claim "100% Natural" on the Products' labels and advertising is material to a reasonable consumer;

j.   Whether a reasonable consumer is likely to be deceived by a claim that a product is "100% Natural" where the product contains or is made from genetically modified ingredients; and,

k.   Whether Defendant's conduct as set forth above injured consumers and if so, the extent of the injury.

62.   The claims asserted by Plaintiff in this action are typical of the claims of the members of the Plaintiff Class and any subclass, as the claims arise from the same course of conduct by Defendant, and the relief sought within the Class and any subclass is common to the members of each.

63.   Plaintiff will fairly and adequately represent and protect the interests of the members of the Plaintiff Class and any subclass.

64.    Plaintiff has retained counsel competent and experienced in both consumer protection and class action litigation.

65.   Certification of this class action is appropriate under Federal Rule of Civil Procedure 23 because the questions of law or fact common to the respective members of the Class and any subclass predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for a fair and efficient decree of the claims.

66.     Absent a class action, it would be highly unlikely that the representative Plaintiff or any other members of the Class or any subclass would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.

67.     Certification also is appropriate because Defendant acted, or refused to act, on grounds generally applicable to both the Class and any subclass, thereby making appropriate the relief sought on behalf of the Class and any subclass as respective wholes. Further, given the large number of consumers of the Products, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

68.     A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that individual actions would engender.

69.     The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action.

## VI. FIRST CAUSE OF ACTION:
## VIOLATION OF COLORADO'S CONSUMER PROTECTION ACT
### COLO. REV. STAT. §§ 6-1-105, *et seq.*

70.     Plaintiff re-alleges and incorporates by reference all allegations set forth in the preceding paragraphs of this First Amended Class Action Complaint.

71.     Plaintiff is informed and believes, and thereon alleges, that Defendant engaged in extensive marketing and advertising, including, but not limited to, print, electronic media, television, internet, and direct marketing through agents, to promote and sell the Products as

being "100% Natural" when they are not, because they contain GMOs in its Yellow Corn Flour, Soy Flour, and/or Soy Lecithin ingredients.

72.     In addition, Defendant fails to disclose the fact that the Products contain GMOs in its related advertising for the Products.   This claim is explicitly not in relation to the packaging or labeling for the Products.

73.     Defendant made the affirmative decision to label and market the Products as "100% Natural," yet it failed to also disclose that the Products contain GMO's.   In light of Defendant's representation that the Products are 100% natural, Defendant's failure to disclose that the Products are made from genetically modified ingredients a deceptive trade practice, because Defendant has failed to disclose material information to the consumer.   Defendant had knowledge that the Products contained GMO's at the time it advertised the Products, and its failure to disclose such a fact was intended to induce Plaintiff to purchase the Products.

74.     This cause of action is brought on behalf of Plaintiff and all similarly situated purchasers, pursuant to COLO. REV. STAT. § 6-1-105(e), (i), (u), which provides, in pertinent part, that "a person engages in a deceptive trade practice when, in the course of such person's business, vocation, or occupation, such person — [k]nowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property," or, "[a]dvertises goods, services, or property with intent not to sell them as advertised," or "fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction."

75.     In addition, C.R.S. § 6-1-105(3) provides: "The deceptive trade practices listed in this section are in addition to and do not limit the types of unfair trade practices actionable at common law or under other statutes of this state."

76.     Defendant committed unfair deceptive business acts and/or practices.  Defendant and its related entities represent themselves as being reputable, reliable manufacturers of food products. However, the utility of Defendant's practices related to the manufacture, marketing, and distribution of the Products for the purpose of selling their Products, and Defendant's minimal, is negligible, if any, when weighed against the economic harm to the general public, Plaintiff, and Members of the Class.

77.     Defendant committed a deceptive act or practice, and/or omission, which has a capacity, tendency, and/or likelihood to deceive or confuse reasonable consumers in that such consumers had a good faith basis for believing the Products were manufactured, marketed, distributed, and sold in a reliable manner consistent with the standards of Defendant's industry.

78.     Defendant's practices related to the manufacture, marketing, and distribution of the Products for the purpose of selling their Products, in such manner as set forth in detail above, constitute unfair and/or deceptive business.  Plaintiff was and is likely to be deceived by Defendant as set forth herein.

79.     Plaintiff therefore seeks an order of this Court:

(a)     Enjoining Defendant from continuing to engage, use, or employ any unfair and/or deceptive business acts or practices related to the their manufacture, marketing, and distribution of the Products for the purpose of selling their Products in such manner as set forth in detail above;

(b)     Restoring all monies that may have been acquired by Defendant as a result of such unfair and/or deceptive acts or practices; and

(c)     Requiring Defendant to cease using genetically modified organisms in its 100% Natural Products and/or stopping Defendant from representing the Products are 100% natural when they are not.

80.     Plaintiff may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted. The unfair and/or deceptive acts and practices of Defendant, as described above, present a serious threat to Plaintiff.

81.     The harmful impact upon Plaintiff who purchased and used the Products for their intended and foreseeable purpose far outweighs any reasons or justifications by Defendant for their practices related to the manufacture, marketing, and distribution of the Products for the purpose of selling their Products.  Defendant had an improper motive (profit before accurate marketing) in their practices related to the manufacture, marketing, distribution, and sale of the Products, as set forth in detail above.

82.     The utilization of such unfair business acts and practices was and is under the sole control of Defendant, and was fraudulently and deceptively hidden from members of the general public in their labeling, advertising, promotion and/or marketing of the Products.

83.     As purchasers and consumers of Defendant's Products, and as members of the general public in Colorado who purchased the Products and used them for their intended and foreseeable purpose, Plaintiff is entitled to and does bring this class action seeking all available remedies under Colorado's Consumer Protection Act, including declaratory, injunctive, and other equitable relief, as well as attorneys' fees and costs.

84.     As a result of Defendant's violation of Colorado's Consumer Protection Act, moreover, Plaintiff is entitled to restitution for out-of-pocket expenses and economic harm. Plaintiff is further entitled to pre-judgment interest as a direct and proximate result of Defendant's wrongful conduct.  The amount of damages suffered as a result is a sum certain and capable of calculation and Plaintiff is entitled to interest in an amount according to proof.

## VII. SECOND CAUSE OF ACTION:
## BREACH OF EXPRESS WARRANTY

85.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this First Amended Class Action Complaint.

86.     Pursuant to COLO. REV. STAT. § 4-2-313(1)(a), "any affirmation of fact or promise made by the seller to the buyer which relates to the good and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Additionally, "any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." *Id*. at § 4-2-313(1)(b).  "It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty . . . ." *Id*. at § 4-2-313(2).

87.     Plaintiff is informed and believes, and thereon alleges, that Defendant engaged in extensive marketing and advertising, including, but not limited to, print, electronic media, television, internet, and direct marketing through agents, to promote and sell the Products as being "100% Natural" when they are not, because they contain GMOs in its Yellow Corn Flour, Soy Flour, and/or Soy Lecithin ingredients.

88.     In addition, Defendant fails to disclose the fact that the Products contain GMOs in its related advertising for the Products.  This claim is explicitly not in relation to the labeling for the Products.

89.     Plaintiff is informed and believes, and thereon alleges that Defendant made express warranties, including, but not limited to that the Products are "100 % Natural," despite the fact that they are not, because they contain GMOs.  Defendant's affirmation of fact that the Products are 100% Natural relates to the good and became the basis of the bargain.

90.     The Products did not conform to Defendant's representation because the Products are not 100% Natural.

91.     Plaintiff has satisfied all conditions precedent necessary to bring this action, including Notice.

92.     The defects in the labeling of the Products constitute a breach of the express warranties as alleged in this First Amended Class Action Complaint.

93.     The failure of the Products to perform as expressly warranted by Defendant has caused Plaintiff economic damages as herein described.

94.     Plaintiff seeks all available remedies and damages for Defendant's breach of express warranty.

### VIII. THIRD CAUSE OF ACTION:
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

95.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this First Amended Class Action Complaint.

96.     Pursuant to COLO. REV. STAT. § 4-2-314(1)-(2), "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to

goods of that kind," and "the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale."

97.     "Goods to be merchantable must be at least such as: (a) Pass without objection in the trade under the contract description; and (b) In the case of fungible goods, are of fair average quality within the description; and (c) Are fit for the ordinary purposes for which such goods are used; and (d) Run, within the variations permitted by the agreement, of even kind, quality, and quantity within each unit and among all units involved; and (e) Are adequately contained, packaged, and labeled as the agreement may require; and (f) Conform to the promises or affirmations of fact made on the container or label if any."

98.     Here, Defendant is considered merchant with respect to the sale of food products, including the Products at issue in this cause.

99.     Plaintiff is informed and believes, and thereon alleges, that Defendant engaged in extensive marketing and advertising, including, but not limited to, print, electronic media, television, internet, and direct marketing through agents, to promote and sell the Products as being "100% Natural" when they are not, because they contain GMOs in its Yellow Corn Flour, Soy Flour, and/or Soy Lecithin ingredients.

100.     In addition, Defendant fails to disclose the fact that the Products contain GMOs in its related advertising for the Products.  This claim is explicitly not in relation to the labeling for the Products.

101.     Defendant's "100% Natural" representation created a contract between Plaintiff and Defendant, whereby Plaintiff agreed to pay Defendants money in exchange for 100% Natural food.  The Products do not pass without objection because the Product contains GMO's, thus rendering it not 100% natural.  The Products do not run within the variations permitted, as

Defendant warranted that the Product is 100% natural. Thus, even assuming the Product is 99% natural, Defendant is in breach.

102.    Based on the forgoing, the Products do not conform to the 100% Natural promise and/or affirmation of fact made on the container and/or label, rending the packaging inadequate.

103.    The above discussed defects in the labeling and Products' ingredients constitute a breach of the implied warranty of merchantability as alleged in this First Amended Class Action Complaint.

104.    The failure of the Products to be 100% natural, as expressly and impliedly warranted by Defendant has caused Plaintiff economic damages as herein described.

105.    Plaintiff has satisfied all conditions precedent necessary to bring this action, including Notice. Therefore, Plaintiff seeks all available remedies and damages for Defendant's breach of express warranty.

## IX. FOURTH CAUSE OF ACTION:
## UNJUST ENRICHMENT

106.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this First Amended Class Action Complaint.

107.    This cause of action is explicitly being pled in the alternative to Plaintiff's causes of action for Breach of Express Warranty and Breach of Implied Warranty of Merchantability.

108.    Defendant has represented on its label that its Nature Valley® granola bars are "100% Natural" when in fact, they are not, because they contain GMOs, a fact that Defendant fails to disclose in its related advertising for the Products.

109.    Plaintiff and Class Members conferred a benefit on Defendant by purchasing the Products.

110.    Defendant accepted and retained the benefit in the amount of the profits it earned from sales of its Products to Plaintiff and Class Members.

111.    Defendant has profited from its unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiff and Class Members, under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit.

112.    Plaintiff and Class Members do not have an adequate remedy at law against Defendant (in the alternative to Plaintiff's other claims).

113.    Plaintiff and Class Members are entitled to restitution of the excess amount paid for the Products, over and above what they would have paid if the dangers and health risks associated with the Products had been adequately disclosed.

114.    Accordingly, the Products were valueless such that Plaintiff and Class Members are entitled to restitution in an amount not less than the purchase price of the Products.

115.    Therefore, Plaintiff and Class Members are also entitled to disgorgement of the profits Defendant derived from the sales of its Products.

## X. FIFTH CAUSE OF ACTION:
## DECLARATORY JUDGMENT

116.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this First Amended Class Action Complaint.

117.    This cause of action is explicitly being pled in the alternative to Plaintiff's causes of action for Breach of Express Warranty and Breach of Implied Warranty of Merchantability.

118.    Defendant has represented on its label that its Nature Valley® granola bars are "100% Natural" when in fact, they are not, because they contain GMOs, a fact that Defendant fails to disclose in its related advertising for the Products.

119.    Plaintiff and the members of the Class seek a declaratory judgment, pursuant to the Federal Declaratory Judgments Law, 28 U.S.C. §§ 2201 *et seq.* and *Federal Rule of Civil Procedure* 57, requiring Defendant to cease using genetically modified organisms in its 100% Natural products and/or stopping Defendant from representing its products are 100% natural when they are not.

120.    In requesting this declaratory relief, Plaintiff is requesting an interpretation of the rights, legal status and relationships of the parties under the above law and facts.

121.    Such interpretation is appropriate under the provisions of the Federal Declaratory Judgments Law, 28 U.S.C. §§ 2201 *et seq.* and *Federal Rule of Civil Procedure* 57.

122.    Plaintiff seeks all available remedies pursuant to this cause of action.

## XI. SIXTH CAUSE OF ACTION:
## MONEY HAD AND RECEIVED

123.    Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this First Amended Class Action Complaint.

124.    This cause of action is explicitly being pled in the alternative to Plaintiff's causes of action for Breach of Express Warranty and Breach of Implied Warranty of Merchantability.

125.    Defendant has represented on its label that its Nature Valley® granola bars are "100% Natural" when in fact, they are not, because they contain GMOs, a fact that Defendant fails to disclose in its related advertising for the Products.

126.    In Colorado, a cause of action for money had and received lies where one person has received money or its equivalent under circumstances which in equity and good conscience ought not to be retained.

127.    Defendant received money from the Plaintiff and members of the Class through Defendant's sale of the Products, and Plaintiff and Class Members' purchase of the Products.

128.    Defendant accepted and retained the purchase price it earned from sales of its Products to Plaintiff and Class Members.

129.    Defendant has profited from its unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiff and Class Members, under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit.

130.    Plaintiff and the Class were damaged by their purchase of the Products because the Products are not 100% Natural, but contain GMOs, despite claiming to be 100% Natural.

131.    Plaintiff and Class Members do not have an adequate remedy at law against Defendant (pled in the alternative).

132.    Defendant should not be permitted to unjustly enrich themselves at the expense of the Plaintiff and members of the Class, and should be required to make restitution for all funds so unlawfully received and retained.

133.    In addition, Defendant should be required to disgorge all interest collected thereon.

134.    Accordingly, the Products were valueless such that Plaintiff and Class Members are entitled to restitution in an amount not less than the purchase price of the Products, and disgorgement of the profits Defendant derived from the sales of its Products.

135.    Therefore, Plaintiff seeks all available remedies pursuant to this cause of action.

## XII.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, and on behalf of all others similarly situated, prays for relief pursuant to each cause of action set forth in this First Amended Class Action Complaint, as follows:

1.      For an order certifying that this action may be maintained as a class action, certifying Plaintiff as the representative of the Class, and designating her counsel as counsel for the Class;

2.      For an order declaring that Defendant is in violation of the Colorado Consumer Protection Act, and awarding Plaintiff all of the relief entitled to Plaintiff under the Act.

3.      For an award of equitable relief as follows:

    (a)      Enjoining Defendant from making any claims that the Products are 100% natural;

    (b)      Requiring Defendant to make full restitution of all monies wrongfully obtained as a result of the conduct described in this First Amended Class Action Complaint;

    (c)      Requiring Defendant to disgorge all ill-gotten gains flowing from the conduct described in this First Amended Class Action Complaint;

    (d)      Requiring Defendant to cease using genetically modified organisms in its 100% Natural Products and/or stopping Defendant from representing the Products are 100% natural when they are not; and

    (e)      Determining the rights, status or other legal relations of the parties under the above law and facts.

4.      For actual damages to be determined at trial;

5.       For reasonable attorney's fees;

6.       For an award of costs

7.       For any other relief the Court might deem just, appropriate, or proper; and

8.       For pre- and post-judgment interest on any amounts awarded.

### XIII. <u>JURY DEMAND</u>

Plaintiff respectfully demands a trial by jury on all issues so triable.

**Respectfully Submitted,**

Dated: <u>January 16, 2013</u>             By: <u>/s/   Benjamin M. Lopatin</u>
                                     Benjamin M. Lopatin, Esq. (Cal. SBN: 281730)
                                     (Admitted to District of Colorado)
                                     *lopatin@hwrlawoffice.com*
                                     **THE LAW OFFICES OF**
                                     **HOWARD W. RUBINSTEIN, P.A.**
                                     One Embarcadero Center, Suite 500
                                     San Francisco, CA 94111
                                     (800) 436-6437; (415) 692-6607 (fax)

                                     *Attorney for Plaintiff and the Proposed Class*

### <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this <u>16st day of January, 2013</u>, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

<u>/s/   Benjamin M. Lopatin</u>
Benjamin M. Lopatin

# EXHIBIT

# 1

## Nutrition Facts

Serving Size 2 bars (42g)
Servings Per Container 6

| Amount Per Serving | 2 bars | | 1 bar |
|---|---|---|---|
| Calories | 190 | | 100 |
| Calories from Fat | 70 | | 35 |
| | | **% DV*** | |
| **Total Fat** 8g | 12% | | 4g 6% |
| Saturated Fat 1.5g | 7% | | 0.5g 4% |
| Trans Fat 0g | | | 0g |
| **Cholesterol** 0mg | 0% | | 0mg 0% |
| **Sodium** 170mg | 7% | | 85mg 4% |
| **Total Carbohydrate** 27g | 9% | | 14g 5% |
| Dietary Fiber 3g | 10% | | 1g 5% |
| Sugars 11g | | | 6g |
| **Protein** 4g | | | 2g |
| Iron | 4% | | 2% |

Not a significant source of Vitamin A, Vitamin C and calcium.

*Percent Daily Values (% DV) are based on a 2,000 calorie diet. Your daily values may be higher or lower depending on your calorie needs.

| | Calories: | 2,000 | 2,500 |
|---|---|---|---|
| Total Fat | Less Than | 65g | 80g |
| Sat Fat | Less Than | 20g | 25g |
| Cholesterol | Less Than | 300mg | 300mg |
| Sodium | Less Than | 2,400mg | 2,400mg |
| Total Carbohydrate | | 300g | 375g |
| Dietary Fiber | | 25g | 30g |

**Ingredients:** Whole Grain Oats, Sugar, Canola Oil, Dark Chocolate Chips (sugar, chocolate liquor, cocoa butter, soy lecithin, natural flavor, salt), Roasted Peanuts, Yellow Corn Flour, Soy Flour, Peanut Butter (peanuts, salt), Brown Sugar Syrup, Honey, Salt, Natural Flavor, Soy Lecithin, Baking Soda. CONTAINS PEANUT, SOY; MAY CONTAIN ALMOND AND PECAN INGREDIENTS.

DIST. BY GENERAL MILLS SALES, INC. MINNEAPOLIS, MN 55440 USA

*16g of whole grain per serving. At least 48g recommended daily.

# NATURE VALLEY
## 100% NATURAL
### granola bars
### Dark Chocolate Peanut Butter

## CRUNCHY
### granola bars

### Dark Chocolate Peanut Butter
**"16g of whole grain"**

6 - 1.49 OZ (42g) 2-BAR POUCHES   NET WT 8.94 OZ (253g)

ENLARGED TO SHOW DETAIL

12 BARS

Take a bar with you wherever you go!

BETTER IF USED BY

02APR2013T03326

UPC 42591

0 16000 42591 0

© 2012 General Mills

Carbohydrate Choices: 2

37371140103

Quality Guarantee
We're committed to quality. In fact, we unconditionally guarantee it. If you are not satisfied with the quality and/or performance of any product at time of purchase, return it to us with your name and date information and UPC and we will refund the purchase price. CALL 1-800-231-0308 (7:30 a.m. to 5:30 p.m. CT weekday) or WRITE: General Mills, Box 200, Mpls, MN 55440 www.GeneralMills.com

No matter where the path takes you...

NATURE VALLEY
NATIONAL PARKS PROJECT

Official natural granola bar of:

PGA HGDA

US SKI TEAM

NATURE VALLEY is there.

12 BARS

NATURE VALLEY
granola bars
Dark Chocolate Peanut Butter





Where do you
take your bar?

Let us know on our
Facebook page or tweet us!

NATURE VALLEY
100% NATURAL

CRUNCHY
granola bars

Dark Chocolate Peanut Butter

NET WT 1.49 OZ (42g)

190 CALORIES PER BAR

Nutrition Facts
Carbohydrate Choices: 2
Serving Size 2 bars (42g), Amount Per
Serving Calories 190, Calories from Fat 70, Total Fat 8g (12% DV),
Saturated Fat 1.5g (7% DV), Trans Fat 0g, Cholesterol 0mg
(0% DV), Sodium 170mg (7% DV), Total Carbohydrate 27g
(9% DV), Dietary Fiber 3g (10% DV), Sugars 12g, Protein 4g, Iron
(4% DV, Not a significant source of vitamin A, Vitamin C and calcium.
Percent Daily Values (DV) are based on a 2,000 calorie diet.

Ingredients: Whole Grain Oats, Sugar, Canola Oil, Dark Chocolate Chips (sugar, chocolate liquor, cocoa butter, soy lecithin, natural flavor, salt), Roasted Peanuts, Yellow Corn Flour, Soy Flour, Peanut

0   16000 50706   7

# EXHIBIT

# *2*

## Nutrition Facts

*16g of whole grain per serving.
At least 48g recommended daily.

Serving Size 2 bars (42g)
Servings Per Container 6

| Amount Per Serving | 2 bars | | 1 bar | |
|---|---|---|---|---|
| | | %DV* | | %DV* |
| Calories | 190 | | 90 | |
| Calories from Fat | 60 | | 30 | |
| | | %DV* | | %DV* |
| Total Fat | 6g | 9% | 3g | 5% |
| Saturated Fat | 0.5g | 3% | 0g | 0% |
| Trans Fat | 0g | | 0g | |
| Cholesterol | 0mg | 0% | 0mg | 0% |
| Sodium | 160mg | 7% | 80mg | 3% |
| Total Carbohydrate | 29g | 10% | 15g | 5% |
| Dietary Fiber | 2g | 8% | 1g | 4% |
| Sugars | 12g | | 6g | |
| Protein | 4g | | 2g | |
| Iron | | 4% | | 2% |

Not a significant source of Vitamin A, Vitamin C and calcium.

*Percent Daily Values (DV) are based on a 2,000 calorie diet. Your daily values may be higher or lower depending on your calorie needs:

| | Calories | 2,000 | 2,500 |
|---|---|---|---|
| Total Fat | Less Than | 65g | 80g |
| Sat Fat | Less Than | 20g | 25g |
| Cholesterol | Less Than | 300mg | 300mg |
| Sodium | Less Than | 2,400mg | 2,400mg |
| Total Carbohydrate | | 300g | 375g |
| Dietary Fiber | | 25g | 30g |

**Ingredients:** Whole Grain Oats, Sugar, Canola Oil, Yellow Corn Flour, Honey, Soy Flour, Brown Sugar Syrup, Salt, Soy Lecithin, Baking Soda, Natural Flavor. **CONTAINS SOY:** MAY CONTAIN PEANUT, ALMOND AND PECAN INGREDIENTS.

DISTRIBUTED BY
GENERAL MILLS SALES, INC.
MINNEAPOLIS, MN 55440 USA
© 2011 General Mills

32002646160

Carbohydrate Choices: 2

---

## NATURE VALLEY
### 100% NATURAL

granola bars

Oats 'n Honey

### CRUNCHY
granola bars

**Oats 'n Honey**
16g of whole grain*

NET WT 8.9 OZ (252g)

6 · 1.5 OZ (42g) 2-BAR POUCHES

ENLARGED TO SHOW DETAIL

12 BARS

OFFICIAL COUPON
BOX TOPS FOR EDUCATION
EXP. 6/1/15

BETTER IF USED BY

Take a bar with you wherever you go!

0   16000 02646   1

---

No matter where **the path** takes you...

official natural granola bar of

**NATURE VALLEY**
### 100% NATURAL
**is there.**

---

NATURE VALLEY
100% NATURAL
granola bars
Oats 'n Honey

Quality Guarantee
We unconditionally guarantee it. If you are not satisfied with the quality of this product, a prompt refund or adjustment of equal value will be made. Your comments and questions are welcome. Save the UPC and code date information and...
CALL 1-800-328-1144 (Mon.-Fri. 7:30a-5:30p Central Time) OR WRITE: General Mills, Box 200, Mpls, MN 55440





NATURE VALLEY
100% NATURAL

CRUNCHY
granola bars

Oats 'n Honey

16g of whole grain*

NET WT 1.5 OZ (42g)

Where do you **trike** your bar?

Let us know on our Facebook page or at †

Calories 190. Calories from fat 60. **Total Fat** 6g 9% DV), Saturated Fat 0.5g (3% DV), Trans Fat 0g, **Cholesterol** 0mg (0% DV), **Sodium** 160mg (7% DV), **Total Carbohydrate** 29g (10% DV), Dietary Fiber 2g (8% DV), Sugars 12g, **Protein** 4g. Iron 4% DV, Not a significant source of vitamin A, vitamin C and calcium. Percent Daily Values (DV) are based on a 2,000 calorie diet.

*16g of whole grain per serving. At least 48g recommended daily.

Ingredients: Whole Grain Oats, Sugar, Canola Oil, Yellow Corn Flour, Honey, Soy Flour, Brown Sugar Syrup, Salt, Soy Lecithin, Baking Soda, Natural Flavor. CONTAINS SOY; MAY CONTAIN PEANUT, ALMOND AND PECAN INGREDIENTS.

DISTRIBUTED BY GENERAL MILLS SALES INC., MINNEAPOLIS, MN 55440 USA

© 2011 General Mills    397 05FF

0 16000 26469 4