**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 12-cv-02815-MSK-MJW

NICOLE VAN ATTA,

      Plaintiff,

v.

GENERAL MILLS, INC.,

      Defendant.

---

**OPPOSITION TO MOTION TO DISMISS
FIRST AMENDED CLASS ACTION COMPLAINT**

---

Plaintiff Nicole Van Atta ("Plaintiff") respectfully submits the following in opposition to the motion to dismiss (Dkt. 31) ("Motion") filed by defendant General Mills, Inc. ("Defendant" or "General Mills").  For the reasons discussed below, Defendant's Motion should be denied in its entirety.  In support of her opposition, Plaintiff states as follows:

<u>**INTRODUCTION**</u>

The arguments raised by General Mills have already been rejected by numerous federal courts.  This Court should also reject them and should deny Defendant's Motion.

The U.S. Court of Appeals for the Third Circuit, the U.S. District Court for the Northern District of California, and the U.S. District Court for the Central District of California, as well as federal courts in other jurisdictions, have held that the Food and Drug Administration ("FDA") has not regulated, and does not regulate, the word "natural" on food labels.  Accordingly, taking all the allegations of Plaintiff's complaint as true, Defendant's motion to dismiss must be denied.

## STATEMENT OF FACTS

### I.    PLAINTIFF'S ALLEGATIONS

Defendant General Mills, Inc. produces and markets Nature Valley® granola bars (the "Products"), which Defendant labels as "100% Natural." (First Amended Class Action Complaint ("FAC"), Dkt. No. 16, at ¶¶ 3, 21.)  In fact, the Products are not "100% Natural" because they contain genetically modified organisms ("GMOs"). (*Id.* at ¶ 3.)

GMOs are plants grown from seeds in which DNA splicing has been used to place genes from another source into a plant. (*Id.* at ¶¶ 4, 31.)  By definition, GMOs are not "100% Natural" because they have been modified in a laboratory. (*Id.* at ¶¶ 4, 32.)  One common example of a genetically modified organism is corn with genes from the *Bacillus thuringiensis* (B.t.) bacterium inserted into its DNA, which enables the corn to produce its own pesticides. (*Id.* at ¶ 34.)  The GMOs at issue in this case are in the form of corn, soy, corn derivatives, and/or soy derivatives – such as yellow corn flour, soy flour, and/or soy lecithin – that have been genetically modified to add or include additional genes and/or DNA. (*Id.* at ¶¶ 5, 21.)

There is increasing concern among health experts and consumers that the presence of GMOs in food may have unexpected and negative health impacts, such as creating new allergens, causing allergic reactions in susceptible individuals, and digestive issues. (*Id.* at ¶ 6.)  In addition to human health risks, concerns about GMOs also relate to environmental hazards and economic concerns. (*Id.* at ¶ 36.)  Accordingly, legislation requiring labeling of GMOs has been proposed in more than a dozen states since 2011. (*Id.* at ¶ 35 (citing Amy Harmon and Andrew Pollack, *Battle Brewing Over Labeling of Genetically Modified Food* (May 24, 2012), *available at* http://www.nytimes.com/2012/05/25/science/dispute-over-labeling-of-genetically-

modified-food.html).)  Since GMOs are not expected to be in foods labeled "100% Natural" (*id.* at ¶ 35), Ms. Van Atta and others were willing to pay a premium price for Defendant's Products labeled as "100% Natural" (*id.* at ¶¶ 13, 26, 29, 53).

Plaintiff read and relied on the material statement on the labeling and in the advertising for the Products that they were "100% Natural," and she purchased the Products believing them to be GMO-free. (*Id.* at ¶¶ 13, 40.)  Specifically, she purchased Nature Valley® 100% Natural Dark Chocolate Peanut Butter Crunchy Granola Bars and Nature Valley® 100% Natural Oats and Honey Crunchy Granola Bars in September 2012. (*Id.* at ¶ 12.)  She would not have purchased them if she had known that they were, in fact, not 100% natural. (*Id.* at ¶ 39.)  As a result, she was damaged by her purchase of the Products because the false and/or misleading labeling and advertising for the Products caused them to be priced higher than they should have been, and Ms. Van Atta did not receive what she reasonably intended to receive when she purchased the Products. (*Id.* at ¶ 14.)

Ms. Van Atta brings this action to secure, among other things, equitable relief, declaratory relief, restitution, disgorgement, and damages on behalf of herself and on behalf of a class of similarly situated Colorado purchasers (the "Class") against Defendant for deceptive and misleading advertising in violation of Colorado's Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-105 *et seq.*, along with causes of action for Breach of Express Warranty, Breach of Implied Warranty of Merchantability, Unjust Enrichment, Claim for Declaratory Judgment, and Claim for Money Had and Received. (*Id.* at ¶ 1.)

## II.     NON-BINDING FDA POLICY REGARDING "NATURAL" LABELING

Although Defendant tries to confuse the issue, the FDA has plainly stated that it has never defined the word "natural" with regard to food labeling. *See* FDA, *What is the meaning of "natural" on the label of food?*, *available at* http://www.fda.gov/AboutFDA/Transparency/ Basics/ucm214868.htm (last visited Mar. 20, 2013) ("FDA has not developed a definition for use of the term natural or its derivatives."); 58 Fed. Reg. 2,302, 2,407 (1993) ("Because of resource limitations and other agency priorities, FDA is not undertaking rulemaking to establish a definition for 'natural' at this time.").[1]

Accordingly, numerous federal courts have found that state law claims based on labeling food as "natural" are <u>not preempted</u> by federal legislation or regulation. *See, e.g.*, *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 340 (3d Cir. 2009) ("We conclude that the FDA's policy statement regarding use of the term 'natural' is not entitled to preemptive effect."); *Wright v. Gen. Mills, Inc.*, No. 08cv1532 L(NLS), 2009 WL 3247148, at *2-3 (S.D. Cal. Sept. 30, 2009) (finding allegations based on "100% natural" representation were not barred by implied preemption).

Tellingly, Defendant has conceded that any statements by the FDA regarding "natural" foods are merely "guidance and ***informal policies***." (Motion at 25; *see also id.* at 8 ("the FDA has not established a formal rule defining the term 'natural'").)

Nor is application of the primary jurisdiction doctrine appropriate here.  The primary jurisdiction doctrine "comes into play whenever enforcement of the claim requires the resolution

---

[1] The Court may take judicial notice of the fact that the FDA has never defined the term "natural" with respect to food labeling. *See U.S. ex rel. Bahrani v. ConAgra, Inc.*, 624 F.3d 1275, 1298 (10th Cir. 2010) (holding that district court did not err by taking judicial notice of fact that the USDA had never taken an official position on an issue).

of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body," *U.S. v. W. Pac. R. Co.*, 352 U.S. 59, 64 (1956).  "The doctrine of primary jurisdiction allows a federal court to refer a matter extending beyond the conventional experiences of judges or falling within the realm of administrative discretion to an administrative agency with more specialized experience, expertise, and insight." *Williams Pipe Line Co. v. Empire Gas Corp.*, 76 F.3d 1491, 1496 (10th Cir. 1996) (quotations and citations omitted).  Whether or not the representation "100% Natural" is misleading to consumers, though, is an issue that is within the special competence of the courts, not the FDA. *See Wright*, 2009 WL 3247148, at *3-4 ("Based on the FDA's consistent determination that the term 'natural' does not need specific definition, state law claims based upon the use of the term 'natural' is not an issue of first impression, does not require technical expertise within the special competence of the FDA, and is not a particularly complicated issue outside the ability of the Court to consider and decide."); *see also Francis v. Mead Johnson & Co.*, No. 1:10-CV-00701-JLK, 2010 WL 5313540, at *4 (D. Colo. Dec. 17, 2010) (holding that, in an action under the CCPA, whether a certain act is deceptive or misleading is a question of fact for the fact-finder and inappropriate for resolution on a motion to dismiss). Furthermore, dismissal is not appropriate under the primary jurisdiction doctrine where, as here, the complaint plausibly asserts a claim that would *not* implicate the doctrine. *See Chavez v. Nestle USA Inc.*, No. 11-56066, 2013 WL 857599, at *1 (9th Cir. Feb. 12, 2013).

Indeed, in various cases regarding "natural" representations on food and beverages, federal courts have consistently declined to dismiss or stay claims under the primary jurisdiction doctrine. *See, e.g., Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2012 WL 6569393, at *6 (N.D. Cal. Dec. 17, 2012) ("The FDA's inaction with respect to the term 'natural' implies that the FDA

does not believe that the term 'natural' requires 'uniformity in administration.' . . . Accordingly, courts need not refer such claims to the FDA pursuant to the primary jurisdiction doctrine." (citing *Lockwood v. ConAgra Foods, Inc.*, 597 F. Supp. 2d 1028, 1035 (N.D. Cal. 2009)); *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955, at *14 (E.D.N.Y. July 21, 2010) ("The question whether defendants have violated FDA regulations and marketed a product that could mislead a reasonable consumer is one courts are well-equipped to handle, and is not an appropriate basis for invoking the primary jurisdiction doctrine." (citation omitted)); *Torres–Hernandez v. CVT Prepaid Solutions, Inc.*, No. 3:08–cv–1057–FLW, 2008 WL 5381227, at *4 (D.N.J. Dec. 17, 2008) (declining to dismiss on primary jurisdiction grounds and observing that "the case at bar [simply] requires this Court to determine whether Plaintiff and those similarly situated received what they bargained for.").

One federal court even granted a six-month stay for the FDA to determine whether high fructose corn syrup was a "natural" ingredient. *Coyle v. Hornell Brewing Co.*, No. CIV.08-02797 (JBS), 2010 WL 2539386, at *5 (D.N.J. June 15, 2010). The FDA refused. *See* Letter from Michael M. Landa, FDA Acting Director, Center for Food Safety and Applied Nutrition, to Hon. Jerome B. Simandle re: *Coyle v. Hornell Brewing Co., Inc.,* Sept. 16, 2010, *available at* http://law.justia.com/cases/federal/district-courts/new-jersey/njdce/1:2008cv02797/215633/119.

The FDA documents cited by General Mills do not support a different conclusion. For example, the January 2001 "Draft Guidance" supports the conclusion that the FDA's guidance is not entitled to deference by making clear that the document "*Contains Nonbinding Recommendations . . .* **being distributed for comment purposes only**." Dkt. No. 31-1, at 2 (FDA, *Guidance for Industry: Voluntary Labeling Indicating Whether Foods Have or Have Not*

*Been     Developed     Using     Bioengineering;     Draft     Guidance*,  available  at http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/GuidanceDocuments/Foo dLabelingNutrition/ucm059098.htm) (emphasis in original).   Indeed, another federal court has already considered this very document in a case involving "natural" labeling and GMOs and found, contrary to the defendant's argument (there, as here), the document does not support dismissal, either due to preemption or the primary jurisdiction doctrine. *See Robert Briseno v. ConAgra Foods, Inc.*, No. CV 11-05379 MMM (AGRx), at 10-14 (C.D. Cal. Nov. 23, 2011),[2] *aff'd, In re ConAgra Foods Inc.*, No. CV 11-05379 MMM (AGRx), 2012 WL 5995454, at *9 (Nov. 15, 2012). Moreover, the court in *Briseno* found that the document "reinforces the view that a food producer's statement as to whether a product contains genetically modified ingredients can be misleading." *Id.* at 11.

Furthermore, Defendant's use of FDA quotations is often misleading because the quotations are taken out of context.   For example, Defendant uses an FDA quote regarding the genetic modification of most cultivated crops to suggest that "GMOs" are natural. (*See* Motion at 6 (quoting Dkt. No. 31-1, at 6[3]).)   In the document cited by Defendant, though, the FDA distinguished between foods that had been genetically modified using bioengineering technology and those that had been genetically modified in some other way. (*See* Dkt. 31-1, at 6.)  Van Atta's allegations  clearly  provide  a  context  that  defines  "GMOs"  as  foods  modified  through

---

[2] Because the November 23, 2011, opinion in *Briseno* is unpublished and not readily available via WestLaw, Plaintiff has attached a true and correct copy of the opinion as Exhibit A.  The Court may take judicial notice of the document under Fed. R. Evid. 201(b)(2).

[3] Defendant's citation is to page 5, but the quote appears on page 6 of the exhibit due to the exhibit's cover page.

**bioengineering technology** (*see, e.g.*, FAC at ¶ 4 ("GMOs are not natural because they grow from seeds that have been modified in the laboratory."); *id.* at ¶ 32 ("The term GM foods or GMOs (genetically-modified organisms) commonly refers to crop plants created for human or animal consumption using the latest molecular biology techniques . . . in [a] laboratory . . . ."). Therefore, Defendant's use of a statement about non-bioengineered foods is clearly just wordplay intended to confuse, rather than clarify the issues at stake.[4]

Additionally, Defendant's citations to FDA policy regarding materiality (*see* Motion at 5-7, 16 (citing Dkt. Nos. 31-1, 31-3, 31-4)) are misleading because the issue here is not whether the FDA considers something material. Rather, a non-disclosed fact is considered material under the CCPA "if the consumer would not have purchased the product had he known the non-disclosed information." *Id.* at *6 (quoting Black's Law Dictionary (9th ed. 2009)). As Van Atta has plainly alleged this (*see* FAC at ¶ 39), her allegations are sufficient to allege materiality, *see Francis*, 2010 WL 5313540, at *6 (holding that plaintiff's allegations that certain facts, if disclosed, would have influenced her purchasing decision were sufficient to defeat a motion to dismiss).

Moreover, the FDA policy statements and warning letters cited by Defendant were not made in the context of labeling foods as "100% Natural" when they contained genetically engineered ingredients. For example, Defendant quotes an FDA statement regarding the materiality of labeling foods with genetically engineered ingredients. (*See* Motion at 7 (quoting Dkt. No. 31-1, at 7); *id.* at 16 (citing Dkt. No. 31-3, at 22,991; Dkt. No. 31-4, at 25,839; Dkt. 31-

---

[4] Ironically, the FDA warned about this type of wordplay when it acknowledged that labeling regarding genetically engineered ingredients could be misleading. (*See* Dkt. No. 31-1, at 6 ("Terms like 'not genetically modified' and 'GMO free,' that include the word 'modified' are not technically accurate unless they are clearly in a context that refers to bioengineering technology.").)

1, at 4, 7).)  Nothing in the context of the FDA's statements, though, indicates that the FDA was discussing the materiality of genetically engineered ingredients in food labeled as "100% Natural," which is the relevant question in this litigation.

Lastly, it is worth noting that other federal agencies do consider GMO products to be different from non-GMO products, highlighting the materiality of making such a distinction.  For example, the U.S. Department of Agriculture (USDA), which regulates agricultural products like corn and soy, draws such a distinction with regard to foods labeled as "organic."  Specifically, in its regulations regarding foods or ingredients labeled as "organic," the USDA prohibits "methods used to genetically modify organisms or influence their growth and development by means that are ***not possible under natural conditions***," such as "recombinant DNA technology (including gene deletion, gene doubling, introducing a foreign gene, and changing the positions of genes when achieved by recombinant DNA technology)." 7 C.F.R. § 205.2 (definition of "Excluded methods" (emphasis added)); *id.* at § 205.301(f)(1) (stating that all products or ingredients identified as "organic" must *not* be produced using "excluded methods").  Additionally, the U.S. Environmental Protection Agency clearly considers GMO corn to be different from non-GMO corn, as it requires "mandatory segregation methods" to prevent GMO corn from "commingling with other corn in cultivation, handling, storage and transport." *In re StarLink Corn Prods. Liability Litig.*, 212 F. Supp. 2d 828, 834 (N.D. Ill. 2002) (regarding corn seeds that produce an insecticide and are marketed under the brand name "StarLink").

III.   **DEFENDANT'S VIOLATION OF FDA POLICY REGARDING "NATURAL" LABELING**

Even if the FDA policy regarding "natural" labeling were applicable here (which it is not), Defendant's conduct at issue is in violation of that policy.  Defendant's arguments otherwise are based entirely on a faulty premise that "Van Atta does not allege that Nature Valley granola bars contain any artificial flavor or synthetic substances, flavors, or color additives." (Motion at 8.)  In fact, Van Atta does allege that the Products contain synthetic substances when she alleges that the Products contain GMOs (*i.e.*, genetically engineered ingredients). (FAC at ¶ 3.)  Indeed, her allegations emphasize that "[t]here is nothing natural about genetically modified food." (*Id.* at ¶ 30.).  Recognizing that "synthetic" and "unnatural" are synonymous,[5] Van Atta has, therefore, alleged that the Products contain unnatural, synthetic substances.  As such, they are in violation of the FDA policy relied on so heavily by General Mills.

## APPLICABLE LEGAL STANDARDS

"'[T]he Federal Rules of Civil Procedure erect a powerful presumption against rejecting pleadings for failure to state a claim.'" *Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1251 (10th Cir. 1999) (quoting *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989)).  Yet, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial

---

[5]*See* Black's Law Dictionary (defining "artificial" as "[m]ade or produced by a human or human intervention *rather than by nature*" (emphasis added) and "natural" as "[b]rought about by nature *as opposed to artificial means*" (emphasis added)).

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8's liberal pleading standard is applicable to Plaintiff's breach of warranty claims. *Francis v. Mead Johnson & Co.*, No. 1:10-CV-00701-JLK, 2010 WL 5313540, at *3 n.3 (D. Colo. Dec. 17, 2010).

Plaintiff's Colorado's Consumer Protection Act claims and unjust enrichment claims are subject to the heightened pleading standards of Rule 9(b), which requires Plaintiff to "state with particularity the circumstances constituting [the complained of] fraud." *Francis*, 2010 WL 5313540, at *3 (citing Fed. R. Civ. P. 9(b); *Duran v. Clover Club Foods Co.*, 616 F. Supp. 790, 793 (D. Colo. 1985)). Under Rule 9(b), Plaintiff must specifically plead the "who, what, when, where and how" of her CPPA and unjust enrichment claims. *Id.* at *3 (citing *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006)). "In other words, Plaintiff's complaint must 'set forth the time, place and contents of the false representation, the identity of the party making the false statements[,] and the consequences thereof.'" *Id.* (quoting *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1991)).

"The particularity requirement is designed to afford a defendant 'fair notice of the plaintiff's claims and the factual ground upon which they are based.'" *Martinez v. Nash Finch Co.*, 886 F. Supp. 2d 1212, 1216 (D. Colo. 2012) (Krieger, J.) (citing *HealthONE of Denver, Inc. v.*

11

*UnitedHealth Group, Inc.*, 805 F. Supp. 2d 1115, 1121 (D. Colo. 2011)).  "At the same time, Rule 9(b) must be read in conjunction with the requirements of Fed. R. Civ. P. 8, which calls for simple and concise pleading." *Id.*

## ARGUMENT

## I.      THE COMPLAINT STATES A VIABLE CCPA CLAIM.

"The CCPA is a remedial statute 'enacted to regulate commercial activities and practices which, because of their nature, may prove injurious, offensive, or dangerous to the public.'" *Francis*, 2010 WL 5313540, at *3 (quoting *Rhino Linings U.S. v. Rocky Mt. Rhino Lining*, 62 P.3d 142, 146 (Colo.2003)).  Van Atta has alleged a viable CCPA claim, and Defendant's arguments to the contrary are not persuasive.

### A.  Plaintiff Can Maintain a Class Action Under the CCPA Because Fed. Rule Civ. P. 23 Overrides the CCPA's Class Action Ban.

The United States Supreme Court has held that, in a diversity case pending in federal court (such as the instant case), state law cannot limit the federal class action mechanism of Federal Rule of Civil Procedure 23. *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 130 S.Ct. 1431, 1448 (2010) (Stevens, J., concurring).[6]

*Shady Grove* is directly on point here because it involved a state law (N.Y. Civ. Prac. L. § 901(b)) that precluded a suit from proceeding as a class action. *Shady Grove*, 130 S.Ct. at 1437. The Supreme Court held that Rule 23 did not abridge, enlarge, or modify any substantive right

---

[6] As the Court of Appeals for the Tenth Circuit has recognized, Justice Stevens' concurring opinion is the controlling opinion in *Shady Grove*. *See James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1217 (10th Cir. 2011) (citation omitted).

created by the state statute and, therefore, superseded the state statute with respect to the prerequisites for maintaining a class action in federal court sitting in diversity. *See id.* at 1459-60. In the same way, Rule 23 does not abridge, enlarge, or modify any substantive right created by Colorado Revised Statutes § 6-1-113.  Accordingly, Rule 23 controls here, and Van Atta's class action allegations should not be stricken based on Colorado's state law.

### B. Colo. Rev. Stat. § 6-1-106(1)(a) Provides No Safe Harbor for Conduct in Violation of Federal and State Law.

The exemption of Colorado Revised Statute § 6-1-106(1)(a) only applies to conduct that is regulated by a governmental agency *and* that is in compliance with "'the orders or rules of, or of a statute administered by, a federal, state, or local governmental agency.'" *Showpiece Homes Corp. v. Assurance Co. of Am.*, 38 P.3d 47, 56 (Colo. 2001) (en banc) (quoting Colo. Rev. Stat. § 6-1-106(1)(a)).  Since there is no applicable FDA rule, Defendant's conduct is not in compliance such a rule.  Therefore, Defendant finds no shelter within this safe harbor provision.

Moreover, Defendant only argues that its conduct "complies with FDA *policy*." (Motion at 13 (emphasis added).)  Defendant cites no authority, and there is none, for the contention that non-binding agency policy protects a business under the CCPA's safe harbor provision.  By the plain language of the exemption, it only relates to governmental orders, rules, and statutes. *See generally Showpiece*, 38 P.3d at 51-58 (looking to the plain language of the CCPA and the purposes served by the statute).

Furthermore, even if FDA had a final rule that paralleled its policy, Van Atta has alleged a violation of such a rule in that she has alleged the Products were labeled "natural" but contained artificial/synthetic substances (GMOs).

**C. Defendant Mischaracterizes Plaintiff's Allegations.**

Plaintiff does not dispute the elements of a CCPA claim outlined by Defendant. (*See* Motion at 14.)  Defendant's arguments regarding these elements, though, completely miss the mark.  They are based on Defendant's erroneous contention that "Van Atta does not allege that Nature Valley granola bars contain anything synthetic or artificial." (Motion at 15.).  As discussed above, Van Atta alleges that the Products contain GMOs (FAC at ¶ 3) and that "[t]here is nothing natural about genetically modified food" (*id.* at ¶ 30). (*See*, *supra*, STATEMENT OF FACTS, Section III.)

Moreover, Plaintiff's allegations are not merely conclusory.  For example, she alleges that "GMOs are not natural because they grow from seeds that have been modified in the laboratory" (FAC at ¶ 4), and "the Products have been genetically modified to add or include additional genes and/or DNA" (FAC at ¶ 5).  Therefore, Van Atta has sufficiently alleged that the Products contain synthetic and artificial substances.  For that reason, and the other reasons explained below, Plaintiff has alleged well-pleaded facts as to the first, fourth, and fifth elements of a CCPA claim. (Defendant does not dispute that she has alleged well-pleaded facts as to the second and third elements.)

**D. Plaintiff Has Alleged Facts Sufficient To Establish a CCPA Claim.**

<u>Element 1</u>:  Plaintiff has alleged a CCPA claim under Colo. Rev. Stat. § 6-1-105(1)(e), (i), and (u). (FAC at ¶ 74.)  Those subsections provide, respectively and in pertinent part, that "a person engages in a deceptive trade practice when, in the course of such person's business, vocation, or occupation, such person . . . (e) Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property . . . ; (i)

14

Advertises goods, services, or property with intent not to sell them as advertised; [or] . . . (u) fails to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction[.]" Colo. Rev. Stat. § 6-1-105(1).

Pursuant to § 6-1-105(1)(e), Plaintiff has alleged that Defendant knowingly made a false representation that the ingredients of the Products were "100% Natural" when the Products contained genetically engineered ingredients. (FAC at ¶¶ 3-4.)  Defendant does not dispute that it knew its Products contained genetically engineered ingredients.  Nor does Defendant dispute that it labeled the Products as "100% Natural."  Defendant only disputes that it knew such a representation was false for products containing genetically engineered ingredients. (*See* Motion at 16-17.)  Whether Defendant actually knew the "100% Natural" representation was false, though, is clearly a factual question.  The issue for the Court at this stage is whether Plaintiff has adequately alleged Defendant's knowledge, which she has done.  For example, Van Atta has alleged that "Defendant had knowledge that the Products contained GMO[s] at the time it advertised the Products [as '100% Natural'], and its failure to disclose such a fact was intended to induce Plaintiff to purchase the Products." (FAC at ¶ 73.)  If Defendant failed to disclose the presence of GMOs because it knew such disclosure would discourage Plaintiff from purchasing the Products, as alleged, one can reasonably infer that the reason it chose not to disclose that fact is that it would undercut the effectiveness of the "100% Natural" inducement.  Indeed, Defendant has provided no other reason for why it did not disclose the presence of GMOs.[7]

---

[7] Defendant argues that the FDA does not consider genetically engineered crops to be materially different from conventional crops, but this does not support a belief that genetically engineered ingredients are 100% natural.  For one, it is not clear that conventional crops are considered 100%

Pursuant to Colo. Rev. Stat. § 6-1-105(1)(i), Plaintiff has alleged that Defendant advertised goods, services, or property with intent not to sell them as advertised by advertising the Products as "100% Natural" when the Products contained genetically engineered ingredients. (*See, e.g.*, FAC at ¶¶ 21, 25, 27.).  Defendant erroneously contends that Van Atta "has not even identified a single advertisement, as required by § 105(1)(i)."  On the contrary, Van Atta alleges that, in addition to misleading labeling and other advertising, "Defendant's '100% Natural' claims are also broadcast over the Internet on its website, *www.generalmills.com*, making the statement, '100% Natural.'" (FAC at ¶ 27.)

Pursuant to Colo. Rev. Stat. § 6-1-105(1)(u), Plaintiff has alleged that Defendant failed to disclose material information concerning goods, services, or property, which information was known at the time of an advertisement or sale, and that the failure to disclose such information was intended to induce the consumer to enter into a transaction. (*See, e.g.*, FAC at ¶ 73 ("Defendant had knowledge that the Products contained GMO[s] at the time it advertised the Products, and its failure to disclose such a fact was intended to induce Plaintiff to purchase the Products.").)  Defendant disputes the materiality of the non-disclosed information (*see, e.g.*, Motion at 16), but Plaintiff has sufficiently pleaded why disclosure of the presence of genetically engineered ingredients is material to a consumer purchasing a product labeled as "100% Natural" (*see, e.g.*, FAC at ¶¶ 35-37).  Moreover, "[w]hen the evidence concerning a material fact is such that

---

natural either.  Indeed, the FDA has acknowledged that "it is difficult to define a food product that is 'natural' because the food has probably been processed and is no longer the product of the earth." FDA, *What is the meaning of "natural" on the label of food?*, *available at* http://www.fda.gov/AboutFDA/Transparency/Basics/ucm214868.htm.  Therefore, based on the facts alleged, a jury could reasonably find that Defendant did have knowledge of the falsity of its representation that its Products with genetically engineered ingredients were "100% Natural."

reasonable minds could differ with reference thereto, the same should be submitted to the jury for its determination." *Gonzales v. Safeway Stores, Inc.*, 147 Colo. 358, 362 (1961); *see also Francis*, 2010 WL 5313540, at *4.

    <u>Elements 4 & 5</u>: Van Atta has sufficiently alleged facts showing that misconduct by General Mills caused her injury.  First, Defendant does not make any arguments regarding element 4 (injury-in-fact) (*see generally* Motion at 17-18), and Defendant has elsewhere conceded that Van Atta has Article III standing (which requires injury-in-fact) with respect to the Products she purchased (*see generally id.* at 31-33).  Thus, only element 5 (causation) is really in dispute.

    Defendant's arguments regarding causation completely miss the mark.  Defendant is simply wrong that Van Atta has not alleged reliance on any advertisements. (*See* Motion at 17.) Van Atta has indeed alleged that she relied on Defendant's labeling and other advertising of the Products as "100% Natural." (*See* FAC at ¶¶ 17, 40.)  In addition, she has alleged that all the advertising for the Products conveyed the "100% Natural" misrepresentation. (*See id.* at ¶ 25.) Furthermore, she has alleged that Defendant failed to disclose the presence of GMOs in all the advertisements for its Products. (*See id.* at ¶ 42.)

    Next, Defendant argues that Van Atta's disappointment with the Products was "actually caused by her unreasonable[,] subjective interpretation of the phrase ['100% Natural']." (Motion at 17.)  Yet, Van Atta has provided detailed allegations as to why, using an objective standard, the representation "100% Natural" is false for a food containing genetically engineered ingredients. (*See, e.g.*, FAC at ¶¶ 31-34.)  Thus, Plaintiff's disappointment in the Products was not just caused by her subjective interpretation of the phrase "100% Natural."

Nor was it caused by a "misreading" of the word "natural," as Defendant contends (*see* Motion at 17 (citing *Hairston v. S. Beach Beverage Co., Inc.*, No. CV 12-1429-JFW (DTBx), 2012 WL 1893818, at *4 (C.D. Cal. May 18, 2012))).  In *Hairston*, the court found that the plaintiff's claim was based on a statement read out of context. *See Hairston*, 2012 WL 1893818, at *4. Additionally, the court found that it would be impossible for the plaintiff to allege how the "all natural" language at issue was deceptive without relying on statements that the court had already determined were subject to preemption. *Id.*  In stark contrast, Defendant has not argued here, and could not argue, that Van Atta has read the statement "100% Natural" out of context.  Indeed, what else could such a statement mean other than "this product is made from 100% natural ingredients"? Nor is Van Atta seeking to rely on any preempted claims to shore up her claim regarding "100% Natural," as the plaintiff was in *Hairston*.

## II.   THE COMPLAINT STATES AN EXPRESS WARRANTY CLAIM.

General Mills promises on the labels for the Products that the Products are "100% Natural." (FAC at ¶ 3.)  This creates an express warranty under Colorado Revised Statutes § 4-2-313(1). General Mills does not dispute that Van Atta has properly pleaded that Defendant's representations created an express warranty.  Instead, General Mills argues that Van Atta has not properly pleaded that any warranties were breached, that she was injured, or that she properly notified General Mills. (Motion at 18-19.)

For reasons already discussed, Van Atta has sufficiently pleaded that Defendant provided her Products that did not conform to what Defendant represented them to be – *i.e.*, "100% Natural."

Thus, she has clearly pleaded breach of an express warranty. Van Atta has also sufficiently pleaded injury, as discussed above with regard to element 5 of her CCPA claim.

Tellingly, in contrast to the inapposite cases cited by Defendant (*see* Motion at 18-19), no court has dismissed claims based on genetically engineered ingredients labeled as "100% Natural." Indeed, courts faced with similar "all natural" food labels have refused to dismiss (or reversed dismissals of) similar claims when the products contained processed ingredients, such as corn syrup, alkalized cocoa, and *trans fat*. *See, e.g.*, *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 339 (3d Cir. 2009) (reversing dismissal of claims challenging "all natural" iced tea containing high fructose corn syrup); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 936 (9th Cir. 2008) (reversing dismissal of breach of warranty and unfair competition claims challenging toddler snacks purportedly made with "all natural ingredients" but containing corn syrup); *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2011 WL 2111796, at *3-4 (N.D. Cal. May 26, 2011) (denying motion to dismiss claims challenging "all natural" ice cream containing alkalized cocoa); *Henderson v. Gruma Corp.*, No. CV 10-04173 AHM AJWX, 2011 WL 1362188, at *11 (C.D. Cal. Apr. 11, 2011) (denying motion to dismiss claims challenging "all natural" bean dip containing *trans fat*); *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1080 (E.D. Cal. 2010) (denying motion to dismiss claims challenging "all natural" beverages containing high fructose corn syrup); *Lockwood v. ConAgra Foods, Inc.*, 597 F. Supp. 2d 1028, 1030 (N.D. Cal. 2009) (denying motion to dismiss claims challenging "all natural" pasta sauce containing high fructose corn syrup).

Lastly, Van Atta has sufficiently pleaded that she provided adequate notice to maintain her warranty claims. As General Mills points out, notice is "a condition precedent for a breach of

warranty claim." (Motion at 19.) *See also Palmer v. A.H. Robins Co., Inc.*, 684 P.2d 187, 206 (Colo. 1984).  Within her breach of express warranty allegations, Van Atta alleged that she "satisfied all conditions precedent, . . . including Notice." (FAC at ¶ 91.)[8]

General Mills argues that this is not enough. (Motion at 19.)  General Mills complains that she did not allege "facts regarding how, when, or to whom she allegedly provided notice of the alleged breach." (*Id.*)  This argument ignores the plain text of Fed. R. Civ. 9(c):  "In pleading conditions precedent, ***it suffices to allege generally*** that all conditions precedent have occurred or been performed." Fed. R. Civ. 9(c) (emphasis added).  Van Atta's allegations (*see* FAC at ¶ 91) satisfy the Rule. *See Rich's Rest., Inc. v. McFann Enterprises, Inc.*, 39 Colo. App. 545, 547 (1977) (holding that plaintiff satisfied Col. R. Civ. P. 9(c) (which mirrors Fed. R. Civ. P. 9(c)) by generally alleging that it "completed any and all conditions precedent to said agreement" with regard to breach of warranty claim).

General Mills then attempts to graft additional requirements onto Rule 9(c), citing *Twombly*.  Yet this argument is unavailing, as the decision in *Twombly* concerned the general pleading standard "under Rule 8 and did not address Rule 9(c)'s standard for pleading conditions precedent." *E.E.O.C. v. U.S. Steel Corp.*, No. CIV.A. 10-1284, 2012 WL 3017869, at *8 (W.D. Pa. July 23, 2012).  As a result, "[it] cannot be applied in a way which overrides the language of Rule 9(c)." *Id.*; *accord El-Ad Residences at Miramar Condo. Ass'n, Inc. v. Mt. Hawley Ins. Co.*, No. 09-CV-60723, 2009 WL 3019786, at *2 (S.D. Fla. Sept. 23, 2009) (holding that *Twombly* and

---

[8] Within her breach of implied warranty allegations, addressed, *infra.*, in Section III, Van Atta made identical allegations that satisfy her notice requirement for those allegations. (*See* FAC at ¶ 105.)

its progeny "do[] not alter the standard established by Rule 9(c) for pleading conditions precedent").

Furthermore, aside from the notice Van Atta has properly alleged, Van Atta's complaint is itself notice of her breach of warranty claims. "In the context of a retail purchase, the filing of a lawsuit, under some circumstances, may be sufficient to provide notice to a defendant." *Palmer v. A.H. Robins Co., Inc*., 684 P.2d 187, 207 n.3 (Colo. 1984). Whether such notice is sufficient is a matter not appropriate for a motion to dismiss, as "the issues of sufficiency and reasonableness of the notice require a factual determination." *Wallman v. Kelley*, 976 P.2d 330, 333 (Colo. Ct. App. 1998) (reversing summary judgment for warrantor).

## III.    THE COMPLAINT STATES AN IMPLIED WARRANTY OF MERCHANTABILITY CLAIM.

In addition to creating an express warranty, Defendant's promise on the labels for the Products that the Products are "100% Natural" creates an implied warranty that the Products will "[c]onform to the promises or affirmations of fact made on the container or label." Colo. Rev. Stat. § 4-2-314(2)(f).  As with Van Atta's express warranty claims, General Mills does not dispute that Van Atta has properly pleaded that Defendant's representations created an implied warranty of merchantability.  Instead, General Mills argues that Van Atta has not properly pleaded that any implied warranties were breached, that she was injured, or that she properly notified General Mills. (Motion at 19-23.)  Defendant's arguments fail with regard to Plaintiff's implied warranty claims for the same reasons they fail with regard to Van Atta's express warranty claims. (*See*, *supra*, Section II.)

Additionally, with regard to the arguments unique to Plaintiff's implied warranty claims, General Mills is simply wrong.  For example, Colo. Rev. Stat. § 4-2-314(a), by its express language, does not require a separate contract from the product description creating the warranty, and General Mills cites no authority in support of its assertion that a separate contract is required. (*See* Motion at 21.)  Secondly, General Mills incorrectly establishes the baseline standard for the "100% Natural" granola bars as average "granola bars."  Yet, the standard at issue is clearly "100% natural granola bars."  Van Atta has plainly alleged facts suggesting that the Products were below "fair average quality within the description" in that they did not even comport with the description. (*See, e.g.*, FAC at ¶ 101.)  Similarly, because Van Atta has sufficiently pled that the Products are not "100% Natural," the Products would surely *not* pass "without objection in the trade under the contract description." *See In re ConAgra Foods Inc.*, No. CV 11–05379 MMM (AGRx), 2012 WL 599545, at *14 (denying motion to dismiss with respect to implied warranty of merchantability claims under New Jersey and Washington law based on "100% Natural" representation).[9] Furthermore, these allegations suffice to state a claim under § 4-2-314(2)(c) in that the goods are not fit for the ordinary purposes for which such goods (*i.e.*, 100% natural granola bars) are used. They are not fit for the purposes of consuming completely natural products and supporting the companies that make such products, as evidenced by the fact that "Plaintiff would not have purchased the Products had she known that they were not 100% natural" (FAC at ¶ 39).

---

[9] Defendant's citation in this section of its argument to *Hairston* (Motion at 21) is unavailing, as the court in *Hairston* was analyzing an express warranty under the federal Magnuson-Moss Warranty Act ("MMWA"). *See Hairston*, 2012 WL 1893818, at *6.  As the court in *In re ConAgra Foods* pointed out, while "*100% Natural*" may not be a "written warranty" as defined in the MMWA's provision for express warranty, it *could be considered an implied warranty under the MMWA as well as state statutes. See In re ConAgra Foods*, 2012 WL 599545, at *6-7.

With regard to § 4-2-314(2)(f), Defendant incorrectly states that Van Atta's claim is not in relation to the labeling for the Products. (*See* Motion at 22 (citing FAC at ¶ 100).)  As with Van Atta's CCPA claim, the allegation that "[t]his claim is explicitly not in relation to the labeling for the Products" only refers to Plaintiff's omission claim. (*Compare* FAC at ¶ 72, *with id.* at ¶ 100.)[10] Additionally, Defendant's citation to a treatise defining "merchantable" (Motion at 22 (citing 18 Williston on Contracts § 52:76 (4th ed. 2009)) is unavailing because Colorado's statute provides its own definition, *see* Colo. Rev. Stat. § 4-2-314, which is controlling here.  For the reasons articulated throughout this brief, products that purport to be "100% Natural granola bars" are not merchantable under Colorado law when they contain unnatural ingredients such as GMOs.

## IV.   THE COMPLAINT STATES A CLAIM FOR UNJUST ENRICHMENT.

Defendant's unjust enrichment argument is premised entirely on its mistaken contention that its use of "natural" is in compliance with federal law. (*See* Motion at 23-24.)  As previously explained, there is no federal regulation that applies to labeling food as "100% Natural." (*See*, *supra*, page 4.)  Nor does Defendant to point to any federal regulation regarding the labeling of foods containing genetically engineered ingredients, as there is none.  Since such regulations do not exist, Defendant's conduct cannot be in compliance with them.  Nor is Defendant's use of the word "natural" even consistent with FDA guidance and policy, as General Mills has labeled foods with unnatural ingredients as "100% Natural."  Accordingly, it would not be unjust to punish General Mills because Van Atta paid for products that were not what she paid for – *i.e.*, completely

---

[10] Defendant recognized this distinction with regard to the CCPA allegations (*see* Motion at 16) but missed it with regard to the implied warranty allegations.

natural products.  It would be unjust for General Mills to retain the benefit it received from Plaintiff as a result of its deceptive conduct.

## V.      THE COMPLAINT STATES A CLAIM FOR MONEY HAD AND RECEIVED.

An action for money had and received may be maintained in Colorado "when a person has in his possession money belonging to another which in equity and good conscience he ought to pay over to the claimant." *Ryan v. Spaniol*, 193 F.2d 551, 553 (10th Cir. 1951).  Thus, to the extent this cause of action has elements, there are only two: (1) a person has in his possession money belonging to another and (2) in equity and good conscience he ought to pay the money over to the claimant.  In essence, a claim for money had and received is equivalent to a claim for unjust enrichment, except that a claim for money had and received is one at law. *See id.* ("Although an action for money had and received is one at law, it is in the nature of a suit in equity and is governed by equitable principles. . . . The action is founded upon the principle that a person should not be unjustly enriched at the expense of another.").

As Plaintiff here has satisfied both elements identified above, she is entitled to relief under this principle in the event that her claims for breach of warranty are not actionable.  First, General Mills does not dispute that it is in possession of money paid by Plaintiff for the Products.  Second, for the same reasons discussed above with respect to Plaintiff's claim for unjust enrichment (*see*, *supra*, Section IV), General Mills in equity and good conscience ought to pay the money back to Plaintiff.

General Mills mistakenly argues that an action for money had and cannot be maintained unless the plaintiff first requested repayment and the defendant refused to pay prior to suit. (Motion

at 24 (citing *Morgan v. Brinkhoff*, 145 Colo. 78, 85 (1960); *Bankers Trust Co. v. Int'l Trust Co.*, 108 Colo. 15, 29 (1941)).)  The cases cited by General Mills, though, are inapplicable, as they do not address the facts at issue here regarding a consumer who purchased a consumable product on the basis of misrepresentation, only to determine later that the product was not what the defendant had led her to believe it was.  Despite a diligent search, Plaintiff could find no case law involving a consumable product such is at issue here.  The *Morgan* decision relied upon by Defendant involved the purchase of a business. *Morgan*, 145 Colo. at 79.  Thus, there was no product that could be consumed.  Moreover, because the contract to purchase the business was rescinded prior to full performance on the contract of sale, *see id.* at 85-86, the plaintiff had not taken possession of the property in question and had nothing to return to the defendant.  *Bankers Trust Co.* involved the purchase of farm loan notes, which the plaintiff was able to deliver back to the defendant. *See Bankers Trust Co.*, 108 Colo. at 29.  Accordingly, these cases provide little guidance for a consumer food product, which is designed to be consumed shortly after purchase.

## VI.     THE COMPLAINT STATES A DECLARATORY JUDGMENT CLAIM.

Federal law permits a district court to issue declaratory relief. 28 U.S.C. § 2201(a).  General Mills does not argue that § 2201 does not allow declaratory relief here.  Instead, General Mills argues that, because Van Atta seeks an injunction, there is no "actual controversy" to obtain a declaration. (Motion at 27.)  The argument – circular and nonsensical as it is – is also factually false and legally irrelevant.

First, Plaintiff seeks a declaration – and not merely an injunction.  She "is requesting an interpretation of the rights, legal status and relationships of the parties under the above law and

facts." (FAC at ¶ 120.)  Both declaratory relief and injunctive relief may be sought in the same

case. Fed. Proc. § 23:19 (10th ed.).   In fact, declaratory relief is often sought in addition to

injunctive relief.  The Supreme Court has summarized the reason why a party may seek both:

> [A]n injunction might be withheld because, despite a plaintiff's strong claim for relief under the established standards, the injunctive remedy seemed particularly intrusive or offensive; in such a situation, a declaratory judgment might be appropriate . . . .

*Samuels v. Mackell*, 401 U.S. 66, 73 (1971); *see also* Fed. R. Civ. P. 57, Advisory Comm. Note

("[W]hen coercive relief only is sought but is deemed ungrantable or inappropriate, the court may

*sua sponte*, if it serves a useful purpose, grant instead a declaration of rights.").

Second, there is an "actual controversy" giving rise to Van Atta's request for declaratory

relief.  Just as Van Atta has Article III standing to bring her claims under CCPA and for breach of

warranty, her declaratory judgment claim satisfies Article III as well.  Undeterred, General Mills

cites *Surefoot LC v. Sure Foot Corporation*, 531 F.3d 1236 (10th Cir. 2008) (*see* Motion at 27),

an action where a ski boot manufacturer sought declaratory judgment because it was concerned

that a shoe traction manufacturer *might* sue it for trademark infringement. *Id.* at 1240.  Yet, here,

there is a *present* suit – not just an "imminent" suit.  It presents an "actual" controversy, satisfying

Article III, unlike in *Surefoot*.

General Mills then argues that district courts have discretion in granting declaratory relief.

(Motion at 27.)  This is true, but it is beside the point in a *motion to dismiss*.  General Mills then

invites the court to instead refer the matter to the FDA.  (*Id.*)  General Mills fails to mention that

the FDA has consistently refused such referrals. (*See* discussion, *supra*, STATEMENT OF

FACTS, Section II.)

VII.   **THE COMPLAINT SHOULD NOT BE DISMISSED UNDER THE PRIMARY JURISDICTION DOCTRINE.**

As previously discussed, application of the primary jurisdiction doctrine is not appropriate here. (*See* discussion, *supra*, pages 4-7.)  Only one federal case has decided otherwise with respect to the word "natural," and it was specifically decided on the basis of the fact that it involved cosmetic products:

> The only FDA statement regarding the use of the word "natural" comes in the form of an "informal policy statement," and is ***limited to the food labeling context***. . . .  In the absence of any FDA rules or regulations (or even informal policy statements) regarding the use of the word "natural" ***on cosmetics labels***, the court declines to make any independent determination of whether defendants' use of "natural" was false or misleading. . . .  Thus, the court finds that plaintiff's claims are barred under the primary jurisdiction doctrine . . . .

*Astiana v. Hain Celestial Group, Inc.*, No. C 11-6342 PJH, 2012 WL 5873585, at \*3 (N.D. Cal. Nov. 19, 2012) (emphasis added).  In contrast, every case involving food labeled as "natural" has survived dismissal regarding the primary jurisdiction doctrine. *See Wright*, 2009 WL 3247148, at \*3-4; *Jones*, 2012 WL 6569393, at \*6; *Lockwood*, 597 F. Supp. 2d at 1035; Exhibit A (*Robert Briseno v. ConAgra Foods, Inc.*, No. CV 11-05379 MMM (AGRx)), at 14.

VIII.   **VAN ATTA HAS STANDING REGARDING DEFENDANT'S PRODUCTS THAT ARE SUFFICIENTLY SIMILAR TO PRODUCTS SHE PURCHASED.**

The allegations in the First Amended Complaint clearly establish Plaintiff's Article III standing.  Plaintiff alleges that she suffered a concrete and particularized injury when she bought products mislabeled as "100% Natural" that, in fact, contained non-natural, genetically modified organisms. (*See, e.g.*, FAC at ¶¶ 12-14.)  Plaintiff claims that she was deceived by Defendant's

misrepresentations and that she paid money she would not otherwise have paid had she known the truth about the products. (*See id.* at ¶ 39.)  Because she has alleged a concrete, particularized, and actual injury that is fairly traceable to the challenged action and redressable by a favorable ruling, her allegations are sufficient to establish Article III standing. *See Clapper v. Amnesty Int'l, USA*, 133 S.Ct. 1138, 1147 (2013) (citations omitted).  Indeed, Defendant does not dispute that Van Atta has Article III standing with respect to products that she purchased.

As to products that she did not purchase, Defendant confuses the issue of Article III standing with the issue of "class standing," which takes into account factors such as the plaintiff's adequacy for representing a particular class of individuals. *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 158 n.9 (2d Cir. 2012) ("What the district court thought was a 'standing' issue was in reality a class certification issue." (citation and quotation omitted)); *see also Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 992 (E.D. Cal. 2012) ("[T]reatises and the vast majority of persuasive authority indicate that . . . the issue of whether a class representative may be allowed to present claims on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation." (quotation omitted)).  Ultimately, determining whether Plaintiff is an appropriate class representative will involve an analysis of whether her claims "'implicate[] the same set of concerns' as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *NECA-IBEW*, 693 F.3d at 162 (quoting *Gratz v. Bollinger*, 539 U.S. 244, 267 (2003)); *see also Brown v. Hain Celestial Group, Inc.*, 2012 WL 6697670, at *7 (N.D. Cal. Dec. 22, 2012) (standard for class standing is "whether there are substantial similarities in the accused products and whether there are similar misrepresentations across product lines such that

[the plaintiff's] injury is sufficiently similar to that suffered by class members who purchased other accused products"); *Stewart v. Smart Balance Inc.*, 2012 WL 4168584 (D.N.J. June 26, 2012) (fact that the plaintiff did not purchase every variety of the product does not defeat standing where the claims as to each product are the same, the products are closely related, and the defendants are the same). Each of the products challenged in the FAC contained the identical "100% Natural" claim on its label. (FAC at ¶¶ 12, 21.) As with the Products purchased by Plaintiff, each of the challenged Products allegedly contained GMOs in the form of corn, soy, corn derivatives, and/or soy derivatives; specifically: Yellow Corn Flour, Soy Flour, and/or Soy Lecithin. (*Id.*) Thus, the challenged Products are sufficiently similar to support Plaintiffs' class standing for all of them.

## IX. VAN ATTA'S CLAIMS FOR INJUNCTIVE AND DECLARATORY RELIEF ARE PROPERLY PLED.

### A. Federal Law – Not State Law – Governs Plaintiff's Request for Injunctive Relief.

Noting that the CCPA does not expressly list injunctions as being available in private suits, General Mills argues that an injunction is, therefore, unavailable in this matter. (Motion at 34.) Yet federal law – not state law – governs the availability of injunctions in a diversity case. *See* Fed. R. Civ. P. 65; *Equifax Services, Inc. v. Hitz*, 905 F.2d 1355, 1361 (10th Cir. 1990) (holding that *Erie* doctrine, requiring federal court to apply state law in diversity actions, does not apply to preliminary injunction standards); *Lyons v. Jefferson Bank & Trust,* 781 F. Supp. 1525, 1530 (D. Colo. 1992) (granting injunction); *see also Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1448 (11th Cir. 1991) (affirming injunction, holding federal law applies); *Guar. Trust Co. of N.Y. v. York*, 326 U.S. 99, 106 (1945) ("[A] federal court may afford an equitable remedy for a substantive right recognized by a State even though a State court cannot give it.").

**B.   Van Atta Has Standing to Seek a Prospective Injunction Because She Is Likely To Be Injured in the Future.**

Next, General Mills argues that Van Atta lacks standing to sue for an injunction because – even if the Products were falsely labeled – she now knows better than to buy them. (Motion at 34.) General Mills concludes that Van Atta lacks standing to obtain injunctive relief because "there is no risk she will be confused by the product's label in the future." (*Id.*)

Numerous courts have rejected this exact argument.   Indeed, if a consumer's mere recognition of alleged deception were to defeat standing for an injunction, then injunctive relief would never be available in false advertising cases, which is a wholly absurd result. *See, e.g.*, *Henderson v. Gruma Corp.*, No. 10-04173, 2011 WL 1362188, at *7 (C.D. Cal. Apr. 11, 2011) ("If the Court were to construe Article III standing for FAL and UCL claims as narrowly as the Defendant advocates, federal courts would be precluded from enjoining false advertising under California consumer protection laws because a plaintiff who had been injured would always be deemed to avoid the cause of the injury thereafter ('once bitten, twice shy') and would never have Article III standing."); *see also Larsen v. Trader Joe's Co.*, No. C 11-05188 SI, 2012 WL 5458396, at *4 (N.D. Cal. June 14, 2012); *Cabral v. Supple, LLC*, No. EDCV 12-00085-MWF, 2012 WL 4343867, at *2-3 (C.D. Cal. Sept. 19, 2012).

Attempting to support its erroneous interpretation of standing for injunctive relief, General Mills cites *Barney v. Pulsipher*, 143 F.3d 1299, 1306 n.3 (10th Cir. 1998), where the court held that former jail inmates could not enjoin their former jailers from engaging in sexual misconduct absent evidence that they would return to jail and be assaulted by the jailers.   Yet, unlike the former inmates in *Barney*, Van Atta will be at a grocery store again and is almost certain to see Nature Valley products being sold.   Van Atta is still a consumer who values all natural foods and who

enjoys all-natural granola bars, and she may yet be deceived again regarding granola bars labeled as "natural."

To conclude otherwise would essentially prevent federal courts from ever granting injunctive relief in consumer fraud actions – giving defendants license to misrepresent their food products with impunity. *See generally Roe v. Wade,* 410 U.S. 113, 125 (1973) (holding plaintiff had standing to challenge abortion statute despite her no longer being pregnant as her suit was capable of repetition yet evading review).  Even if Van Atta were to lack standing for injunctive relief (which she does not), her conundrum falls squarely within the doctrine of "capable of repetition, yet evading review." *See, e.g.*, *Pearlman v. Vigil-Giron*, 71 F. App'x 11, 13 (10th Cir. 2003) (holding that challenge to election ballots was not mooted by election having already taken place); *see also U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (describing mootness as "the doctrine of standing in a time frame"); *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 322 (D.C. Cir. 2009) (holding challenge to delayed issuance of export license for food was not moot).  Consumers cannot compel General Mills to change the labels for Products that are sitting in the consumers' kitchen trash cans.  Moreover, because every consumer who files suit has learned the truth of Defendant's "100% Natural" granola bars, the ability to enjoin the  false labeling would evade review every time.

Finally, General Mills forgets that Van Atta seeks to represent a class of consumers who were deceived – consumers who are still being deceived and have not yet learned better than to trust Defendant's "100% Natural" representations.  Thus, even if the controversy were no longer alive as to Van Atta, it would remain "very much alive" for the class of persons she seeks to represent. *Sosna v. Iowa,* 419 U.S. 393, 401 (1975) (holding that a class representative's suit

challenging one-year residential requirement for divorce was not mooted by the fact that she had satisfied the residency requirement by the time of litigation).

## X. THE COMPLAINT SATISFIES RULE 9(b).

To the extent that Rule 9(b) applies here, Van Atta has sufficiently alleged the "who, what, when, where, and how" of Defendant's deception.  The "who" is General Mills.  (*See* FAC at ¶¶ 3, 21.)  The "what" is the statement that its Nature Valley granola bars are "100% Natural."  (*See id.*)  The "when" is since at least October 23, 2008, and throughout the class period.  (*See id.* at ¶ 56.)  The "where" is on the granola bar labels.  (*See id.* at ¶ 3.)  The "how" is that the Products, in fact, are not "100% Natural" because they contain GMOs, which are plants that have been modified in a laboratory to place genes from another source into their DNA.  (*See id.* at ¶¶ 3, 4, 31, 32.)

Moreover, Van Atta identified the labels on the Products that falsely represented the Products were "100% Natural."  She describes the labels.  She quotes the labels.  (*See, e.g.*, FAC at ¶¶ 21-23.)  She even attaches images of the labels as exhibits.  (*See* FAC, Exhibits 1, 2.).  This is sufficient "notice to the defendant[] of the fraudulent statements for which [it is] alleged to be responsible."  *Schwartz*, 124 F.3d at 1252-53 (holding plaintiff satisfied Rule 9(b) by identifying the fraudulent statements, describing the statements, and alleging the facts which the statements misrepresented or failed to disclose).

General Mills does not address these allegations.  Instead, General Mills argues that Van Atta must allege "where *she* bought the granola bars, or when or where *she* first encountered Nature Valley's '100% Natural' statement." (Motion at 35 (emphasis added).)  This is the incorrect standard – the relevant "who" is General Mills, not Van Atta.  She need not allege which store she

stood in when she first saw the statement or the day she first saw the statement.  Such facts do

nothing to give General Mills notice of the fraudulent statements for which it is responsible.  "A

court must remember that Rule 9(b) is read in conjunction with the principles of Rule 8, 'which

calls for pleadings to be "simple, concise, and direct, . . . and to be construed as to do substantial

justice."'" *Schwartz*, 124 F.3d at 1252; *see also HealthONE of Denver, Inc. v. UnitedHealth Group

Inc.*, 805 F. Supp. 2d 1115, 1121 (D. Colo. 2011).

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court deny Defendant's

motion to dismiss in its entirety.[11]

Respectfully submitted,

**LAW OFFICES OF HOWARD W. RUBINSTEIN**
*/s/ Benjamin Michael Lopatin*
Benjamin Michael Lopatin
One Embarcadero Center, Suite 500
San Francisco, California 94111
Telephone: (800) 436-6437
Facsimile:  (415) 692-6607
Email: *lopatin@hwrlawoffice.com*

***Counsel for Plaintiff and the Proposed Class***

---

[11] If for any reason the Court grants any part of Defendant's Motion, Plaintiff hereby requests for leave to amend her complaint. *See* Fed. R. Civ. P. 15(a)(2) (leave to amend should be liberally granted).

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2013, I electronically filed the foregoing "OPPOSITION TO MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT," along with "EXHIBIT A" attached thereto, with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties who have appeared in this action.

Dated: March 21, 2013          **LAW OFFICES OF HOWARD W. RUBINSTEIN**
                               */s/ Benjamin Michael Lopatin*
                               Benjamin Michael Lopatin