IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02815-MSK-MJW

NICOLE VAN ATTA, as an individual, and on behalf of all others similarly situated,

Plaintiff,

v.

GENERAL MILLS, INC., a Delaware corporation,

Defendant.

## RECOMMENDATION ON
## DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION
## COMPLAINT (Docket No. 31)

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this court pursuant to an Order Referring Case (Docket No. 5) issued by Chief Judge Marcia S. Krieger on November 9, 2012.

## PLAINTIFF'S ALLEGATIONS

Plaintiff Nicole Van Atta asserts the following in her First Amended Class Action Complaint (Docket No. 16).  Sometime in September 2012, plaintiff purchased two products manufactured by defendant General Mills, Inc.: Nature Valley® 100% Natural Dark Chocolate Peanut Butter Crunchy Granola Bars and Nature Valley® 100% Natural Oats and Honey Crunchy Granola Bars (the "Products").  Plaintiff alleges that the Products are mistakenly or misleadingly labeled as "100% Natural," when in fact they are not "natural," because the Products contain genetically modified organisms ("GMOs").  Plaintiff alleges that GMOs are not natural because, among other reasons,

2

GMOs grow from seeds that have been modified in a laboratory.  Plaintiff alleges that she relied on the "100% Natural" label believing it to mean that the Products were free of GMOs.

Furthermore, plaintiff alleges that "[t]here is increasing concern amongst health experts and consumers alike that [GMOs] may have unexpected and negative impacts on human health."  In addition, plaintiff states that she paid a premium price for the Products, as compared to similar products which are not labeled as "100% Natural."

Plaintiff filed this matter as a class action for injunctive relief, restitution, disgorgement, and damages against defendant.  Plaintiff seeks to represent the Class defined as "all Colorado residents who have purchased General Mills Nature's Valley granola bars containing Yellow Corn Flour, Soy Flour, or Soy Lecithin, for personal use, during the period extending from October 23, 2008, through and to the filing date of this First Amended Class Action Complaint."

Plaintiff's Claim One is for violation of Colorado's Consumer Protection Act ("CCPA"), Colo. Rev. Stat. §§ 6-1-105, et seq.  Claim Two is for breach of express warranty pursuant to Colo. Rev. Stat. § 4-2-313(1)(a).  Claim Three is for breach of implied warranty of merchantability pursuant to Colo. Rev. Stat. § 4-2-314(1)-(2).  Claim Four is for unjust enrichment.  Claim Five, for declaratory judgment, is pled in the alternative to Claim Two and Claim Three, and seeks an order requiring defendant to cease using GMOs in their "100% Natural" products.  Claim Six is pled in the alternative to Claim Two and Claim Three, and is for money had and received.

3

**PENDING MOTION**

Now before the court for a report and recommendation is defendant's Motion to

Dismiss First Amended Class Action Complaint (Docket No. 31).

The court has carefully considered the First Amended Class Action Complaint

(Docket No. 16), the motion to dismiss (Docket No. 31), plaintiff's response (Docket No.

40), and plaintiff's reply (Docket No. 42).  In addition, the court has taken judicial notice

of the court's file, and has considered the applicable Federal Rules of Civil Procedure

and case law.  The court now being fully informed makes the following findings of fact,

conclusions of law, and recommendations.

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the

claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A motion to

dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon

which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint must be dismissed

pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead "enough facts to state a claim to

relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570

(2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of

his 'entitlement to relief' requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do . . . ."  Id. at 555 (citations

omitted).  "Factual allegations must be enough to raise a right to relief above the

speculative level."  Id.  "[A] plaintiff must 'nudge [] [his] claims across the line from

conceivable to plausible' in order to survive a motion to dismiss. . . .  Thus, the mere

metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of

4

the pleaded claims is insufficient; the complaint must give the court reason to believe

that *this* plaintiff has a reasonable likelihood of mustering factual support for *these*

claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)

(quoting Twombly, 550 U.S. at 570).

The Tenth Circuit Court of Appeals has held "that plausibility refers 'to the scope

of the allegations in a complaint: if they are so general that they encompass a wide

swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims

across the line from conceivable to plausible.'" Khalik v. United Air Lines, 671 F.3d

1188, 1191 (10th Cir. 2012). The court has further "noted that '[t]he nature and

specificity of the allegations required to state a plausible claim will vary based on

context.'" Id. The court thus "concluded the *Twombly/Iqbal* standard is 'a middle

ground between heightened fact pleading, which is expressly rejected, and allowing

complaints that are no more than labels and conclusions or a formulaic recitation of the

elements of a cause of action, which the Court stated will not do.'" Id.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must

accept all well-pled factual allegations in the complaint as true and resolve all

reasonable inferences in the plaintiff's favor. Morse v. Regents of the Univ. of Colo.,

154 F.3d 1124, 1126-27 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32

(10th Cir. 1996). However, "when legal conclusions are involved in the complaint 'the

tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to [those] conclusions' . . . ." Khalik, 671 F.3d at 1190 (quoting Ashcroft v.

Iqbal, 556 U.S. 662 (2009)). "Accordingly, in examining a complaint under Rule

12(b)(6), [the court] will disregard conclusory statements and look only to whether the

5

remaining, factual allegations plausibly suggest the defendant is liable." Id.

Among the many arguments put forth by defendant in its motion to dismiss is the argument that plaintiff's complaint should be dismissed under the primary jurisdiction doctrine.  Although the court does not find that dismissal is appropriate at this time, it does find that this matter should be stayed under the primary jurisdiction doctrine.

The doctrine of primary jurisdiction is "specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency." Reiter v. Cooper, 507 U.S. 258, 268 (1993).  The purpose of the doctrine is to "allow agencies to render opinions on issues underlying and related to the cause of action." Crystal Clear Commc'ns, Inc. v. Sw. Bell Tel. Co., 415 F.3d 1171, 1179 (10th Cir. 2005).  It is "designed to allow an agency to pass on issues within its particular area of expertise before returning jurisdiction to the federal district court for final resolution of the case." Id. at 1176.

In the Tenth Circuit, a court's decision to invoke the primary jurisdiction doctrine "require[s] it to consider whether the issues of fact in the case: (1) are not within the conventional experience of judges; (2) require the exercise of administrative discretion; or (3) require uniformity and consistency in the regulation of the business entrusted to the particular agency." Id. at 1179.  "Additionally, when the regulatory agency has actions pending before it which may influence the instant litigation, invocation of the doctrine may be appropriate." TON Servs., Inc. v. Qwest Corp., 493 F.3d 1225, 1239 (10th Cir. 2007) (citing Mical Commc'ns, Inc. v. Sprint Telemedia, Inc., 1 F.3d 1031, 1037-38 (10th Cir. 1993)).

The underlying question in this matter is simply stated: whether a product can be

labeled as "natural" if the product contains GMOs.

Through the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq*, the FDA has regulatory authority over food labeling.  Specifically, the FDCA sets forth regulations to ensure that food is labeled so as to not mislead consumers.  <u>See</u> 21 U.S.C. 341 *et seq*; <u>see also</u> 21 U.S.C. 343(a)(1) (deeming food misbranded if "its labeling is false or misleading in any particular").  Congress has clearly indicated that food labeling enforcement requires the FDA's expertise and uniformity in administration. <u>See</u> H.R. Rep. No. 101-538, at 7, <u>reprinted in</u> 1990 U.S.C.C.A.N. 3336, 3337 (indicating that Congress passed the Nutrition Labeling and Education Act ("NLEA") to "clarify and to strengthen" the FDA's "legal authority to require nutrition labeling on foods and to establish the circumstances under which claims may be made about nutrients in foods").  Furthermore, "no State or political subdivision of a State may directly or indirectly establish . . . any requirement for the labeling of food that is not identical to the [FDCA]."  21 U.S.C. § 343-1(a).

Accordingly, the central question in this matter clearly falls within the FDA's regulatory authority.  However, the FDA has not issued a rule which requires products containing GMOs to be labeled as such, nor has the FDA issued a rule regarding whether products labeled as "natural" may contain GMOs.  Any guidance issued by the FDA has been non-binding in nature and has not specifically addressed products labeled as "natural" which contain GMOs.  For example, the FDA has issued non-binding guidance defining "natural" to mean that "nothing artificial or synthetic . . . is included in, or has been added to, the product that would not normally be expected to be there."  58 Fed. Reg. 2302, 2407 (Jan. 6, 1993).  However, the FDA has not issued

any guidance as to whether GMOs are "artificial or synthetic."

Under these circumstances, the court finds that invocation of the primary jurisdiction doctrine is appropriate.  The issues of fact in this matter are not within the conventional experience of judges, they require the exercise of administrative discretion, and they require uniformity and consistency in the regulation of the business entrusted to the particular agency.

The court notes that on July 11, 2013, pursuant to 21 C.F.R. § 10.25(c), Judge Yvonne Rogers, in Cox v. Gruma Corp., Case No. 12-cv-6502 YGR (N.D. Cal. 2012), referred to the FDA for administrative determination "the question of whether and under what circumstances food products containing ingredients produced using bioengineered seed may or may not be labeled 'Natural' or 'All Natural' or '100% Natural.'"  Accordingly, there is no need for this court to refer the same issue to the FDA.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that defendant's Motion to Dismiss First Amended Class Action Complaint (Docket No. 31) be **DENIED** without prejudice with leave to re-file if appropriate.  It is further

**RECOMMENDED** that, pursuant to the primary jurisdiction doctrine, this case be **STAYED** pending action by the FDA with respect to the referral made by Judge Rogers in Cox v. Gruma Corp., Case No. 12-cv-6502 YGR (N.D. Cal. 2012).  It is further

**RECOMMENDED** that the parties be ordered to file joint monthly status reports,

8

on or before the 1st of each month, beginning on October 1, 2013.


**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. <u>Makin v. Colo. Dep't of Corr.</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**


Date:  July 18, 2013                          s/ Michael J. Watanabe
       Denver, Colorado                      Michael J. Watanabe
                                   United States Magistrate Judge